**MISSOURI CIRCUIT COURT**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**ST. LOUIS COUNTY CIRCUIT CLERK**

| | |
|---|---|
| PATRICIA CONWAY ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No: |
| vs. ) | |
| ) | |
| MERCY HOSPITAL ST. LOUIS ) | **JURY TRIAL DEMANDED** |
| ) | |
| Serve at: ) | |
| ) | |
| 615 S New Ballas Rd ) | |
| Saint Louis, MO 63141 ) | |
| ) | |
| Respondent. ) | |

**PETITION**

COMES NOW Petitioner Patricia Conway, by and through her undersigned attorney, and for her Petition states as follows:

1. Petitioner is, and was at all times relevant herein, a resident of St. Louis County, State of Missouri, and an individual over the age of 21 years.

2. Mercy Hospital St. Louis (hereinafter "Mercy Hospital") is, and was at all times relevant herein, a corporation licensed to do business in Missouri.

3. From January 2006 to July 2015, Patricia Conway was employed as a registered nurse at Mercy Hospital (Jan 2006 - July 2015 (9.5 years). She took 2 years off to pursue accounting, and then eventually came back to work at Mercy Hospital as a registered nurse between July 2017 and October 1, 2021.

4. On July 07, 2021, Conway received an email from Lynn Britton, President and CEO of Mercy Hospital, announcing vaccine mandate. During that month, Petitioner additionally received an email from Unit Managers regarding details of vaccine mandate, a copy of

Mandatory COVID-19 Vaccination Policy & FAQ Mercy Hospital, last revised 7/7/21, and a copy of request for Religious Exemption forms.

5. On July 29, 2021, Conway completed and submitted her request for religious exemption on 7/29/21, which was administered electronically through a third-party application that Mercy Hospital's Human Resources Department utilized. In her application, she included a letter, a minister's testament, copy of the Dept of Justice, EEOC.

6. Upon filing her request, she then received an automated reply email from Mercy confirming the submission of my request.

7. On August 2, 2021, Petitioner received an email stating that her religious exemption request was denied.

8. Petitioner had no further conversations with a member of management at Mercy Hospital until September 24, 2021, approximately 8:00 pm while at work. The manager of Mercy Children's Hospital Jenny Schwartz called her asking if she had received the vaccine or planned to. Petitioner informed her that she would not be complying. Schwartz stated that she understood and informed Conway that she would still receive her PTO and that she would continue to work until after her scheduled shift the night of September 30, 2021. She also stated that one of the unit managers or herself would be in contact with her prior to the 30th to go over the details regarding pay and insurance.

9. Conway never heard from either of the unit managers Shayla Gordon or Becky Allen that week. Conway did reach out to a Supervisor Amber Yount, the night before her last shift to request that her final assignment be in her pod.

10. On the morning of October 1, 2021, approximately 7:30 am, Conway was giving a report to the oncoming nurse. She then received a call from Becky Allen, who stated she wasn't

sure how she was to handle this and asked if we could touch base on the following Monday. She then asked Conway if she was quitting? She stated she was aware that Conway had talked to another nurse and expressed to her that the 30th would be her last shift. Conway replied no, and explained that she was only following the policy that Mercy has set in place. Conway did not hear from her again until the next week.

11. On Monday, October 4, 2021, at 4:04 pm, Conway then spoke with Allen for 18 minutes, who informed her Conway that she would be receiving letters from HR regarding the details of the termination. Allen also indicated that the two would touch base towards the end of the month about arranging for a time to return her badge.

12. Conway had a discussion with her regarding her concerns and frustration of learning just a few days before September 30, that one nurse in the unit did receive a religious exemption, while a few others and her were denied. The one nurse that did receive a religious exemption was not Catholic.

13. Allen could not explain why, stating maybe it is just different people that process the request. Conway had no other contact from NICU management since that conversation.

14. In addition, employees were initially informed that employees were given the opportunity for an appeal regarding the denial of their religious exemption. This was information as well as the vaccine mandate was presented to all employees via a webinar video created by doctors and human resources staff at Mercy Hospital. However, no opportunity was offered to Conway at any point in time.

15. During Conway's unemployment hearing on December 8, 2021, HR at Mercy Hospital stated that they did not have any knowledge of her religious exemption, nor did they have her religious exemption application in their possession, despite Conway's confirmation

email of her religious exemption request through the required online portal and instructions given by Mercy Hospital.

16. On January 2022, Petitioner Conway filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC), as well as to the Missouri Commission on Human Rights (MCHR). Exhibit A, Charge of Discrimination.

17. On March 31, 2022, the MCHR mailed a letter to Conway, indicating that their investigation into her case was being terminated, because MCHR lacked jurisdiction over her matter against Mercy Hospital. The MCHR's reasoning was that Mercy Hospital was owned and or operated by a religious or sectarian group, thus exempted from coverage under the Missouri Human Rights Act (MHRA). Exhibit B, Letter re Notice of Termination of Proceedings.

**COUNT I: Violation of Title VII, 42 U.S.C. § 2000e, et seq. Religious Discrimination—Retaliation**

18. Plaintiff restate the foregoing paragraphs as if set forth fully herein.

19. Title VII prohibits Mercy Hospital from retaliating against an employee for engaging in protected activity. See *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464-65 (7th Cir. 2016).

20. Plaintiff engaged in protected activity when they requested (or sought to request) religious accommodations from Mercy's vaccine mandate.

21. Not only were Plaintiff's accommodations denied, but Plaintiff was never given the opportunity to appeal the decision, despite such appeal process being available, as indicated by Mercy.

22. Mercy's Human Resources team acknowledged during Plaintiff's unemployment hearing with the Missouri Division of Unemployment that they had no knowledge of Plaintiff's accommodation, Plaintiff's religious beliefs.

23. Applications are submitted through a separate online platform/application. The lack of face-to-face or telephonic communication with requesters about the circumstances in which they work or other relevant matters raises an inference that little or no inquiry or individualized evaluation was given to the requests.

24. Mercy's "voluntarily resign" ploy is further evidence of the lack of good faith inherent in Mercy's handling of its vaccine mandate exemption process.

25. These actions did, and were intended to, coerce Plaintiff and other employees to either forgo their religious beliefs and receive the COVID-19 vaccine or abandon or not fully document their applications for religious exemption.

26. Mercy's cumbersome, chaotic, and confusing religious exemption process constituted retaliation towards associates seeking religious exemptions.

27. Plaintiff's religious beliefs and her protected activity of seeking a religious exemption were the causes of Mercy's adverse employment actions.

28. By retaliating against Plaintiff for engaging in protected activity, i.e., filing requests for religious exemption and seeking accommodation, Mercy has violated Title VII. This violation has harmed and continues to harm Plaintiff.

WHEREFORE Petitioner Conway requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the discriminatory conduct of Mercy Hospital, Inc., attorneys fees, and for any other relief as may be just and proper under the circumstances.

**COUNT II: Violation of Title VII, 42 U.S.C. § 2000e, et seq. Religious Discrimination—
Direct and Indirect Methods**

29. Pursuant to 42 U.S.C.A. § 2000e-2(a)(1) it is "an unlawful employment practice for an employer. . . to discharge any individual . . . because of such individual's . . . religion[.]"

30. The Supreme Court has observed that this "intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015), and that "Title VII does not demand mere neutrality with regard to religious practices [of employees]—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]" *Id*. at 775. 846. "Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs." *See E.E.O.C. v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 391 (E.D.N.Y. 2016) (citation omitted).

31. Therefore, Title VII will support a claim for "reverse religious discrimination: that defendants subjected claimants to discrimination by imposing religious practices and beliefs on claimants." *Abercrombie & Fitch Stores*, 575 U.S. at 848. "Title VII . . . protects employees from discrimination because they do not share their employer's religious beliefs." *United Health Programs, 213 F. Supp. 3d* at 392. Thus, for example, "[a]n employer discriminating against any nonCatholic violates the anti-discrimination laws no less than an employer discriminating only against one discrete group[.]" *See e.g. Mandell v. Cty. of Suffolk*, 316 F.3d 368, 378 (2d Cir. 2003).

32. In *Applegate et al v. St. Vincent, Inc.*, 1:22-cv-01097-TWP-DML (S.D. Ind. 2022), Plaintiffs filed a class action lawsuit against Indianapolis-based Ascension St. Vincent and its parent company, St. Louis-based Ascension Health, alleging that their vaccine mandate policies and procedures were discriminatory on the basis of religion. Plaintiffs cite that Ascension Health's President and CEO stated in official communications to all Ascension Health associates that they had a "Catholic . . . moral imperative" to "increase[e] the utilization rate of COVID-19 vaccination" and that Ascension Health's vaccine mandate furthers this goal. Plaintiffs in *Applegate* further argued Ascension Health's effort to impose an allegedly "Catholic . . . moral

imperative" upon employees and require them to set aside their personal religious beliefs on pain and penalty of losing employment was overtly discriminatory.

33. Like in *Applegate*, Defendant Mercy Hospital is a Catholic-inspired hospital.

34. Defendant Mercy Hospital similarly attempts to assert their own "moral imperative" onto employees regarding the vaccine in such a way that induces them to set aside their personal religious beliefs on pain and penalty of losing employment, while operating under the "guise" of being held out as a religious organization.

35. Under Title VII, a qualifying religious organization may defend against a claim of discrimination or retaliation by showing that it made the challenged employment decision on the basis of religion. An entity can only avail itself to the "religious organization" exemption if its "purpose and character are primarily religious." The EEOC will consider the facts on a case-by-case basis, and no single factor is dispositive in determining if an entity is a religious organization under the exemption.[1]

36. Not only does Mercy Hospital believe that one's health, well-being, and development is important to their employees, and that they are equally valued, but Mercy Hospital also emphasizes importance in diversity and inclusion.

37. Mercy Hospital does not merely hire Catholics. Mercy Hospital does not request that employees practice Catholicism in order to be employed at their hospital, nor do they require employees to undergo religious curriculum or regularly hold prayer or other religious activities in order to work for the hospital.

---

[1] Factors may include: (1) whether the entity operates for a profit; (2) whether it produces a secular product; (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose; (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue; (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees; (6) whether the entity holds itself out to the public as secular or sectarian; (7) whether the entity regularly includes prayer or other forms of worship in its activities; (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and (9) whether its membership is made up of coreligionists.

38. Mercy Hospital employs many individuals on a wide variety of religious denominations. In fact, Defendant Mercy Hospital states on the Careers page of their website:

> We're proud to create a culture that cherishes every person in the image of God. We believe the diversity of race, gender, sexual orientation, *religion*, ethnicity, nationality, status as a protected veteran and *any other unique characteristics that make us who we are should have nothing to do with our hiring practices. Join us on our journey to continue fostering an environment where inclusion is valued and leveraged*.

39. Mercy Hospital is a for profit hospital that provides healthcare to both religious and nonreligious individuals. While they believe that their advocacy activities flow from Catholic social teachings, Mercy Hospital asserts that they work toward assuring the rights of each person for those things necessary for the proper quality of life and challenge others to join us in assuming responsibility for helping to meet social needs. These values are not only welfarist in nature but are attributes that are expected from a hospital. Thus, Mercy Hospital cannot successfully argue that their purpose and character is "primarily religious."

40. Furthermore, by choosing certain religious exemption requests over others and by coercing its employees into taking a vaccine that is against their sincere religious beliefs, Mercy Hospital leverages "inclusion" in order to have employees conform to Mercy Hospital's rules and policies that forfeit their religious beliefs, or else they lose their jobs. By doing so, Mercy Hospital fails to equally value one's health, well-being, and development.

41. Mercy Hospital falsely claimed that applicants whose religious exemptions were initially denied are allowed to appeal their decision.

42. The totality of the circumstances related to Mercy Hospital's cumbersome, chaotic, and confusing religious exemption process also supports an inference of religious discrimination.

43. Due to the swift rejection of Plaintiff's request for accommodations and religious exemption, the granting of requests from individuals who hold other religious beliefs, and Human Resource's lack of knowledge regarding her application, an individualized assessment should have been conducted, and indeed was required by Title VII to have been conducted but was not.

44. It is reasonable to infer from the totality of the circumstances that Mercy Hospital did not bother engaging in an interactive process with those seeking religious exemption because Mercy Hospital intended to discriminate against those seeking religious exemptions and never intended to provide them with a reasonable accommodation.

45. Mercy Hospital discriminated against Plaintiff by failing to grant her religious exemptions and then forcing them to either undergo the vaccine or be forced to resign.

46. By discriminating against Plaintiff because of her sincerely held religious beliefs and her decision to apply for religious exemptions, Mercy Hospital violated Title VII, and this violation has harmed and continues to harm Plaintiff Conway.

47. Plaintiff filed her charge with the EEOC complaining of these unlawful actions.

WHEREFORE Petitioner Conway requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the discriminatory conduct of Mercy Hospital, Inc., attorneys fees, and for any other relief as may be just and proper under the circumstances.

**COUNT III: Violation of Title VII, 42 U.S.C. § 2000e, et seq. Religious Discrimination—Failure to Accommodate Plaintiff**

48. Plaintiff restate the foregoing paragraphs as if set forth fully herein.

49. Title VII prohibits Mercy Hospital from discriminating against employees based on their religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . .

religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

50. "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

51. The employer must carry the burden of proving undue hardship. 42 U.S.C. § 2000e(j); EEOC Religious Accommodation Regulation, 29 C.F.R. § 1605.2(b) and (c)(1).

52. With regards to Plaintiff's request for accommodations and religious exemption, no justification was provided beyond Mercy Hospital's mere denial and demand to comply with the vaccination requirement by the given deadline.

53. The undue hardship analysis requires an employer to engage in an individualized assessment of each employee's circumstances. This is clear from the statutory language requiring the employer to demonstrate inability to "reasonably accommodate an employee's . . . religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j) (emphasis added). The reference to "an employee's" makes clear that the undue hardship analysis is to be unique to the employee and to that employee's circumstances.

54. "A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship." EEOC Religious Accommodation Regulation, 29 C.F.R. § 1605.2(c) (1).

55. There is nothing which suggests to Plaintiff that the statutorily required individualized assessment of undue hardship was undertaken by Mercy Hospital, let alone that any assessment of her circumstances was accurate. Further, Mercy Hospital's failure to engage in an

interactive process and conduct individualized assessments demonstrates that the statutory process for determining undue hardship was not followed by Mercy Hospital.

56. The foregoing demonstrates that Mercy Hospital's approach was procedurally flawed.

57. "An employer must . . . present evidence of undue hardship" and not "rely merely on speculation," *See Smith v. Pyro Min. Co*., 827 F.2d 1081, 1085–86 (6th Cir. 1987).

58. Undue hardship analysis must start with an analysis of proposed accommodations, to which Mercy Hospital failed at conducting.

59. An employer violates Title VII if it fails to attempt an accommodation after accommodation is requested. *E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("[a]fter failing to pursue [a voluntary waiver of seniority rights] or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship."); *E.E.O.C. v. Ithaca Indus., Inc.*, 849 F.2d 116 (4th Cir. 1988) cert denied 488 U.S. 924 (1988) (same).

60. An employer must demonstrate attempted accommodation before it claims undue hardship as a defense. *See, e.g., Redmond v. GAF Corp*., 574 F.2d 897, 901-2 (7th Cir. 1978); *Shaffeld v. Northrop Worldwide Aircraft Serv. Inc*., 373 F. Supp. 937, 944 (M.D. Ala. 1974).

61. It is clear Mercy Hospital could have considered accommodations beyond even those mitigation measures that are already in place, and there are reasonable accommodations Mercy Hospital could have implemented to accommodate Plaintiff.

62. In May 2021, the EEOC issued guidelines addressing the COVID-19 vaccines and rights and obligations of employers, titled "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws – Technical Assistance Questions and

Electronically Filed - St Louis County - September 20, 2022 - 12:46 PM

Answers" (hereafter "EEOC COVID-19 Guidance"). The EEOC COVID-19 Guidance provides "examples of reasonable accommodations or modifications that employers may have to provide to employees who do not get vaccinated due to disability; religious beliefs, practices, or observance; or pregnancy." Reasonable accommodations the EEOC has identified as potentially not imposing an undue hardship on the employer include requiring the unvaccinated employee entering the workplace to:

    a.   wear a face mask,

    b.   work at a social distance,

    c.   work a modified shift,

    d.   get periodic tests for COVID-19,

    e.   be given the opportunity to telework, or

    f.   accept a reassignment.

63. For over a year, Mercy Hospital has had the opportunity to test many relevant accommodations in the hospitals in which Plaintiff was employed, including daily assessments of personal health and potential exposure, availability of targeted COVID-19 testing, protocols requiring non-work when symptomatic or potentially exposed to COVID-19, contact tracing, handwashing and hygiene, use of PPE, including masking (such as N-95 masks in appropriate circumstances), face shields, gowns, and disposable gloves as required under the circumstances.

64. In addition, there are other accommodations that are potentially available. For instance, the EEOC has specifically identified testing of employees before they enter the workplace. The EEOC COVID-19 Guidance states, "an employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or

periodically to determine if their presence in the workplace poses a direct threat to others." EEOC COVID-19 Guidance, A.6.

65. Before summarily rejecting Plaintiff's requests for religious exemptions Mercy Hospital was required to analyze the potential available accommodations in a real-world context. Had it done so, it would have found accommodations that would eliminate undue hardship. Therefore, Mercy Hospital's assertion that undue hardship exists justifying denial of Plaintiff's religious exemption requests is in error.

66. Plaintiff lost substantial wages as a result of Mercy Hospital not granting her religious exemptions and as a result, was forced to resign.

67. The refusal of religious exemptions led to the employee's job being placed in jeopardy with associated stress, anxiety, and emotional trauma.

WHEREFORE Petitioner Conway requests humbly that the Court enter judgement in his favor, and set the case for trial by jury to assess damages arising from the discriminatory conduct of Mercy Hospital, Inc., attorneys fees, and for any other relief as may be just and proper under the circumstances.

Respectfully submitted,

OTT LAW FIRM

/s/ Joseph Ott

---

Joseph A. Ott, #67889
Mark E. Blankenship Jr. #73123
3544 Oxford Blvd.
Maplewood, MO 63143
Telephone:  (314) 293-3756
Facsimile:   (314) 689-0080
*Attorneys for Petitioner*
*Patricia Conway*