IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01113-RLW |
| | ) | |
| MERCY HOSPITAL ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Patricia Conway has brought a three-count Complaint against Defendant Mercy Hospital St. Louis ("Mercy" or "Defendant") alleging three claims religious discrimination, including failure to accommodate and retaliation. Plaintiff's claims arise from Mercy's COVID-19 vaccination mandate and policy, which required Plaintiff to receive a COVID-19 vaccination or obtain an approved medical or religious exemption. Plaintiff refused to get a COVID-19 vaccine, applying for a religious exemption to the requirement. When that exemption request was denied, Plaintiff's employment subsequently ended due to her failure to comply.

Before this Court is the threshold issue of whether Mercy's status as a religious corporation owned and operated by the Catholic Church exempts it from religious discrimination liability under Title VII pursuant to 42 U.S.C. § 2000e-1(a). It is undisputed that the Catholic Church both owns and operates Mercy, as demonstrated through significant involvement in Mercy's origin, formation, operations, mission, and governance. (SUMF ¶¶ 1-9, 11). Mercy's mission is to provide health care services in furtherance of the healing acts of Jesus Christ in conjunction with Catholic doctrine, directives, and papal approval. (SUMF ¶¶ 6, 8, 9).

1

Mercy now moves for summary judgment on the basis that is a religious organization that is exempt from religious discrimination claims pursuant to Title VII of the Civil Rights Act, and is, therefore, entitled to judgment as a matter of law.

## I.    Factual Background

For purposes of Defendant's Motion for Summary Judgment, the facts of this case are limited as this Motion is based solely upon Defendant's status as a religious corporation.

Defendant is a healthcare provider, operating as a public juridic person within the Roman Catholic Church. (SUMF ¶¶ 1, 4-6, 8-9). The Roman Catholic Church conferred the public juridic person[1] status upon Mercy Health Ministries, the parent organization of Mercy Health and Mercy Hospital St. Louis. (SUMF ¶¶ 1-5). As a public juridic person, Mercy is a legal entity within the Catholic Church, created under Canon Law of the Church. (SUMF ¶ 1, 3-5). Mercy Hospital St. Louis along with all of Mercy Health Ministries' wholly-owned subsidiaries appear in the Official Catholic Directory. (SUMF ¶ 5). To be included in the Catholic Directory, a Catholic Bishop must determine that an entity is operated and controlled by the Catholic Church. (SUMF ¶ 7).

Mercy Health's Board of Directors is also the Board of Directors for Mercy Health Ministry, which is accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life. (SUMF ¶ 8). Mercy's bylaws provides that four of the Class A Directors shall be Sisters of Mercy nuns and, currently, some of the Class B Directors are also nuns. (SUMF ¶ 8).

---

[1]*See Sanzone v. Mercy Health*, 954 F.3d 1031, 1037 fn. 1 (8th Cir. 2020) (The Code of Canon Law provides that "[i]n the Church, besides physical persons, there are also juridic persons, that is, subjects in canon law of obligations and rights which correspond to their nature." 1983 Code c. 113, § 2. "Public juridic persons are aggregates of persons…or of things …which are constituted by competent ecclesiastical authority so that … they fulfill in the name of the Church, … the proper function entrusted to them in view of the public good; other juridic persons are private." 1983 Code c. 116, § 1).

Mercy provides non-profit healthcare services to the greater St. Louis metropolitan area under its Catholic Mission. (SUMF ¶¶ 4-6). Mercy has received an IRS tax exemption status due to its religious status and inclusion in the Official Catholic Directory. (SUMF ¶ 11). Its mission is as follows: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service." (SUMF ¶ 6, Exhibit KM-19). Mercy's own articles of incorporation and bylaws, which are subject to the approval of the Catholic Church, identify its religious purpose . (SUMF ¶ 8-9). As part of its religious mission, Mercy receives funding from the Catholic Church through its various Catholic Dioceses. (SUMF ¶ 18).

Mercy's religious operation and ownership also require it to follow all of the Ethical and Religious Directives for Catholic Health Services, mandated by the National Conference of Catholic Bishops. (SUMF ¶ 10). Mercy's policies specifically require employees to adhere to these directives, which include healthcare directives on contraception, pregnancy termination, and other issues. Mercy also includes religious imagery and practices in its workplace and daily operations, including daily prayer and prayer prior to meetings. (SUMF ¶ 10, Exhibits KM-31, KM-32 and KM-33).

Plaintiff was employed as a registered nurse at Mercy Hospital St. Louis. Mercy Hospital St. Louis is a d/b/a of Mercy Hospitals East Communities, which is a wholly-owned subsidiary of Mercy Health East Communities, which in turn is wholly-owned by Mercy Health. (SUMF ¶ 5) When Mercy instituted a policy requiring all employees to receive COVID-19 vaccinations (as consistent with Catholic teaching and papal guidance),[2] Plaintiff refused. Her request for religious

---

[2] Mercy also had no choice other than to implement a vaccine mandate.  The federal Centers for Medicare & Medicaid Services issued a COVID-19 vaccination mandate ("CMS Mandate") on November 5, 2021, which covered Mercy and its staff.  The CMS Mandate was upheld by the United States Supreme Court on January 13, 2022. *Biden v. Missouri,* 142 S.Ct. 647 (2022).

accommodation was denied, and her employment ended for failing to comply with Mercy policy.

Plaintiff then filed a charge of discrimination and this subsequent lawsuit.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), "a district court may grant a motion for summary judgment if all of the information before the court demonstrates that 'there is no genuine issue as to any material fact and the move party is entitled to judgment as a matter of law.'" *Walker v. Northview Village Nursing Center*, No. 4:14CV2094HEA, 2017 WL 528317, at *1 (E.D. Mo. Feb. 9, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party bears the burden of demonstrating that no material facts are in dispute and that it is entitled to judgment as matter of law. *Id.* (citing *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986)). The nonmoving party must demonstrate the existence of a genuine dispute of a material fact, which occurs only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." *Id.* (citing *Armour and Co., Inc v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993)).

## III.    ARGUMENT

Mercy is entitled to summary judgment on all of Plaintiff's claims. Because it is a religious corporation, it is exempt from Title VII's coverage under 42 U.S.C. § 2000e-1(a). Under §2000e-1(a), Title VII creates an exemption for religious corporations:

> This subchapter shall not apply … to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a); *see also Wirth v. College of the Ozarks*, 26 F.Supp.2d 1185, 1187 (W.D. Mo. 1998).

Several district courts have already concluded that Mercy is a religious corporation under Title VII. *See Boydston v. Mercy Hospital Ardmore*, No. CIV-18-444-G, 2020 WL 1448112, at *6 (W.D. Okla. March 25, 2020) ("[T]he Court determines as a matter of law that Defendants are exempt under § 2000e-1(a) from Plaintiff's Title VII religious discrimination and retaliation claims); *Jenkins v. Mercy Hospital Rogers*, No. 5:19-CV-05221, 2020 WL 1271371, at *2 (W.D. Ark. March 17, 2020) ("As a religious corporation, Mercy remains free to discriminate against its employees on the basis of religion…"); *Saeemodarae v. Mercy Health Services*, 456 F.Supp.2d 1021, 1039 (N.D. Iowa 2006) (holding "Mercy is a 'religious organization' entitled to assert the exemption to Title VII religious discrimination claims, including retaliation claims, set forth in § 2000e-1(a)); *Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011).

As such, Mercy cannot be held liable for religious discrimination or retaliation as a result of its status as a religious corporation.

### a. Mercy is a religious corporation, owned and operated by the Roman Catholic Church, and thereby exempt from religious discrimination under Title VII.

Plaintiff brings three claims of religious discrimination, styling one as "Retaliation," another as "Direct and Indirect Methods" and another as "Failure to Accommodate". *See Complaint*.[3]  Because Mercy is exempt from Title VII coverage as a religious corporation, it cannot

---

[3] However, Plaintiff's claims of religious discrimination and failure to accommodate are indistinguishable under the law. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 773-774 (2015). Because her failure to accommodate claim is identical to her "Direct and Indirect Methods" claim, she can only bring one claim for religious discrimination under Title VII.

be held liable for claims of religious discrimination or retaliation, and, therefore, Plaintiff's claims fail as a matter of law.

The federal courts have established what criteria is necessary to establish an entity is a "religious corporation" under Title VII. *See LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007); *see also Spencer v. World Vision, Inc.*, 619 F.3d 1109, 1119 (9th Cir. 2010). In *LeBoon*, the Court identified nine factors for consideration in determining "religious corporation" status under Title VII:

> (1) whether the entity operators for a profit; (2) whether it produces a secular product; (3) whether the entities articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*Id.* Mercy satisfies these requirements and is a religious corporation, exempt from coverage under Title VII. *See Boydston v. Mercy Hospital Ardmore, Inc.*, No CIV-18-444-G, 2020 WL 1448112, at *4 (W.D. Okla. March 25, 2020).

The *Boydston* decision is dispositive because the court determined that Mercy satisfied factors one through seven. *Id.* at *4-5.[4] Specifically, the Court held:

- As to the first factor, it is undisputed that Defendants are not-for-profit entities.

- Regarding the third and fourth factors, it is undisputed that Defendant Mercy Health's Articles of Incorporation and Bylaws state a religious purposes and that Defendants are affiliated with the Sisters of Mercy (a religious order of the Roman

---

[4] Factors 8 and 9 are inapplicable.

6

Catholic Church) and Mercy Health Ministry (a health care minister with public juridic personality).

- Regarding the fifth factor, it is undisputed that the Sisters of Mercy order has representatives on the Mercy Health Board of Directors.

- As to the sixth factor, the record reflects that Defendants hold themselves out to the public as sectarian through their display of religious symbols in their facilities and through their sectarian mission statement and values statement displayed on the Mercy public website.

- Regarding the seventh factor, …Plaintiff acknowledges that he was exposed to prayer at some meetings.

- Returning to the second factor, …[T]reatments of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect a religious character.

*Id.*

Other decisions are also instructive and use criteria similar to those laid out in the *LeBoon* case. *See Wirth*, 26 F.Supp.2d at 1187; *Ginsburg v. Concordia University*, No. 4:10CV3064, 2011 WL 41891, at *3 (D. Neb. Jan. 5, 2011); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 190, 196 (4th Cir. 2011); *Killinger v. Samford University*, 113 F.3d 196, 199 (11th Cir. 1997); *Spencer v. World Vision, Inc.*, 633 F.3d 723, 729 (9th Cir. 2011) (*per curiam*); *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000).  In *Kennedy* (also a case involving a religious healthcare provider), the Fourth Circuit analyzed various conditions in making its determination that the nursing-care facility (operated by a Catholic religious order of nuns) was a religious corporation. *Kennedy*, 657 F.3d. at 190. The plaintiff filed suit against a nursing-care

facility, St. Catherine's,[5] operated by the Daughters of Charity, a religious order within the Catholic Church. *Id.* St. Catherine's operated as a non-profit, tax-exempt religious organization. *Id*. At the nursing-care facility, prayers were read over the intercom system daily, Catholic Mass occurred one day of the week, including the administration of holy communion. *Id.* Religious imagery and statues were placed in every resident's room and its mission and employee handbook recognized and demonstrated the facility's "Catholic identity." *Id.* Its mission explained that "St Catherine's Nursing Center is a family of faith rooted in the loving ministry of Jesus as healer, and in the Catholic tradition of service." *Id.* Based on these facts, the Court reversed the district court's order denying summary judgment and remanded with instructions to enter judgment for St. Catherine's. *Id.* at 196.

Not only have other district courts determined as such, but also the Missouri Commission on Human Rights (the state agency tasked with enforcing and interpreting the Missouri Human Rights Act) has also consistently determined that Mercy is a religious corporation. (SUMF ¶ 13).

Mercy's religious status is identical to that of the nursing-care facility at issue in *Kennedy*. Both entities were founded by Catholic religious orders of nuns and analyzed the same for purposes of Title VII's exemption. Just as St. Catherine's was founded by the Daughters of Charity (a religious order of nuns in the Catholic Church), Mercy was founded by the Sisters of Mercy, a religious order of nuns in the Catholic Church. (SUMF ¶ 2). Mercy was created and exists to serve Mercy Health Ministry, a public juridic person that is a recognized, constitutive part of the Catholic Church. (SUMF ¶¶ 1, 4-6, 9, 10). Its expressly stated corporate purpose is to further the healing ministry of Jesus as practiced by the Catholic Church. (SUMF ¶¶ 6, 9); *see also Wirth*, F. Supp.

---

[5] While the case is styled as *Kennedy v. St. Joseph's Ministries*, the entity that employed the plaintiff was Villa St. Catherine, Inc.

2d 1185 at 1187. Its proclaimed Mission and Values demonstrate its Catholic identity and purpose. (SUMF ¶¶ 6, 9, 12).

### i.  Mercy's Articles of Incorporation and Bylaws

The governing documents of the civil corporations serving Mercy Health Ministry explicitly state that they operate for the purpose of serving Mercy Health Ministry. (SUMF ¶ 9); *Wirth*, 26 F. Supp. 2d at 1187; *Kennedy*, 113 F.3d at 190; *Manley v. Washington Adventist Hospital*, No. PWG-18-0053, 2021 WL 878358, at *3-4 (D. MD March 9, 2021). Mercy Health's Articles of Incorporation provide that it "shall operate (i) to serve the mission of the Roman Catholic Church . . . to succeed and carry on the health care ministries conducted by the Institute of the Sisters of Mercy of the Americas. . . ."  (SUMF ¶ 9, Exhibit KM-10).

The Articles and Bylaws also require adherence to the ethical and moral teachings of the Catholic Church as set forth in the *Ethical and Religious Directives for Catholic Health Care Services* ("ERDs").  (SUMF ¶ 10). Mercy's Bylaws provide that Mercy "shall adhere to and be guided by the Ethical and Religious Directives for Catholic Health Services of the National Conference of Catholic Bishops … and by the philosophy, mission, and traditions of the Sisters of Mercy." (SUMF ¶¶ 9-10, Exhibit KM-8). Indeed, the ERDs are a set of rules promulgated by the United States Conference of Catholic Bishops, and require Mercy Health Ministry to act in accordance with Catholic teachings. (SUMF ¶ 10, Exhibits KM-20 and KM-21). For example, the ERDs prohibit Mercy Health Ministry from performing certain medical procedures, such as abortions; require Mercy Health to provide pastoral care to patients; impose certain guidelines for partnerships with non-Catholic entities; and require an emphasis on providing care to vulnerable members of the community such as the poor, the uninsured and underinsured, single parents, the

9

elderly, racial minorities, immigrants, and people with disabilities. (SUMF ¶ 10, Exhibit KM-20 and KM-21).

Mercy Health's Bylaws provide that Mercy operates "to carry forward the healing ministry of Jesus in the Church through the management, ownership, or sponsorship of health care facilities, programs and services consistent with the teachings and laws of the Church regarding Catholic health services and with traditions, values and enduring concerns of the Sisters of Mercy. . . ." (SUMF ¶ 8, Exhibit KM-8).  The Bylaws also provide that four Directors are to be Class A Directors, all of whom must be Catholic, and that each Class A Director "shall be a woman religious Sisters of Mercy, so long as there are Sisters willing, able and qualified to serve, be Catholic and grounded in Mercy charism." (SUMF ¶ 7, Exhibit KM-8).  Further, the Board of Directors for Mercy Health also dually serve as Members of Mercy Health Ministry. (SUMF ¶ 7, Exhibits KM-8 and KM-9).

The governing corporate documents of Mercy Health and its affiliates set forth their religious mission and operations in fine detail. (SUMF ¶ 8, Exhibits KM-8, KM-10, KM-13 and KM-14).

### ii.  Mercy's Accountability to the Vatican.

Mercy's Canonical Statutes make its stated purpose to "embody the mission of healing ministry of Jesus in the Roman Catholic Church through the management, ownership or sponsorship of healthcare services [.]" (SUMF ¶ 1, Exhibits KM-13 and KM-14). The Members of Mercy Health Ministry must "operate in accordance with the teaching, discipline, and laws of the Roman Catholic Church." *Id*. To ensure Mercy Health Ministry satisfies its obligations under Canon law, it is "subject to and accountable to the Holy See" in that it must regularly report to the Vatican explaining how the operations of its sponsored corporations are in keeping with the

teachings of the Church and the goals of the Ministry. *Id.*. The reports describe Mercy Health Ministry's current operations and efforts to promote Catholicism in its executing its overarching mission and through day-to-day acts. (SUMF ¶ 8, Exhibits KM-15, KM-16 and KM-17); *see Wirth*, 26 F. Supp. 2d at 1187-88; *Cole*, 2016 WL 7474988, at *3, *6. For example, the Catholic Church requires that Mercy have Church approval before alienating its most valuable property. (SUMF ¶ 8, Exhibit KM-35).

### iii.   Mercy is tax-exempt and a non-profit.

Mercy is a non-profit healthcare provider. (SUMF ¶ 11). It receives financial support from the Catholic Church via its dioceses, and Mercy provides funding to the Catholic Church via the same avenue. (SUMF ¶ 11). Mercy Health and its affiliates (including Mercy Hospital St. Louis) are also listed in the Official Catholic Directory, which identifies "religious institutions operated by the Roman Catholic Church in the United States" and determines Mercy's tax-exempt status. (SUMF ¶ 2, Exhibit KM-34). Mercy's Bylaws state that Mercy is "organized exclusively for religious, charitable, scientific and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended …". (SUMF ¶ 9, Exhibit KM-8).

### iv.   Mercy Catholic identity demonstrated through its religious imagery, daily prayer, and employee education and training.

Reflecting its Catholic operations, Mercy has a cross on its logo, religious symbols within its facilities, and on-site chapels for prayer. (SUMF ¶ 12, Exhibits KM-32 and KM-33). Prayer is a regular part of the work environment. (SUMF ¶ 12, Exhibit KM-31). Prayers are communicated over the public address system and often said before meetings throughout the facility. (SUMF ¶ 12). Catholic religious services, including Mass and other sacraments (anointing of the sick and the Eucharist), are also made available at Mercy's facilities, including Mercy Hospital St. Louis. (SUMF ¶ 12, Exhibit KM-32).

Further, new Mercy employees undergo a training that teaches them about Mercy's status as "a ministry of the Catholic Church," its Catholic heritage, and its obligation to practice medicine consistent with the ERDs. (SUMF ¶ 12, Exhibits KM-22, KM-23, KM-24, KM-26, and KM-27).

**b.  Title VII's religious organization exemption applies to claims of retaliation.**

Plaintiff's claim of retaliation against Mercy also fails for the same reasons as Plaintiff's religious discrimination claim. As made clear in *Saeemodarae, supra*, Title VII's religious organization exemption applies to claims of retaliation as well. 456 F.Supp.2d at 1041. In addressing this very issue, the court stated, "as a matter of 'plain language,' the exemption in §2000e-1(a) for 'religious organizations' from '[t]his subchapter,' necessarily includes an exemption from the anti-retaliation provision in 42 U.S.C. § 2000e-3(a)…." *Id*. (citing *Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). In determining that retaliation claims were covered by Title VII's religious organization exemption, the court dismissed the claims of religious discrimination and retaliation. *Id.* at 1044.

For all of these reasons, and based on all of the undisputed evidence in the record, Mercy Hospital St. Louis is a religious corporation and not subject to religious discrimination claims brought pursuant to Title VII. As a result, this Court should grant Defendant's Motion for Summary Judgment.

## IV.    CONCLUSION

For the foregoing reasons and the factual record before this Court, Mercy Hospital St. Louis is a religious corporation and exempt from religious discrimination claims brought pursuant to Title VII of the Civil Rights Act.  Accordingly, Mercy is entitled to summary judgment as a matter of law.

55326677.v2-OGLETREE

WHEREFORE, Defendant Mercy Hospital St. Louis respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment in its favor, and award Defendant with its costs and fees and for any other such relief as this Court deems just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*/s/ James M. Paul*
James M. Paul, MO #44232
Thomas R. Chibnall, MO #67994
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105
Telephone:  314-802-3935
Facsimile:  314-802-3936
James.Paul@ogletree.com
Thomas.Chibnall@ogletree.com

*Attorneys for Defendant Mercy Hospital
St. Louis*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of March, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Ott Law Firm
Joseph A. Ott
Mark E. Blankenship, Jr.
3544 Oxford Blvd.
Maplewood, MO 63143
Tel: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law

*Attorneys for Plaintiff*

*/s/ James M. Paul*
An Attorney for Defendant Mercy Hospital St.
Louis

13