IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA CONWAY ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:22-cv-01113-RLW |
| vs. ) | |
| ) | |
| MERCY HOSPITAL ST. LOUIS ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT MERCY HOSPITAL ST. LOUIS'S**
**MOTION FOR SUMMARY JUDGMENT**

The Court should <u>deny</u> Defendant's Motion for Summary Judgment because the CMS vaccine mandate places an affirmative obligation on Medicare recipients to give workers' a process through which to obtain a religious exemption from the mandatory vaccine requirement. Mercy's explicit efforts at compliance with the mandate and dissemination of information to employees about it is a waiver of and estops Mercy from asserting the exemption as affirmative defense.

Defendant's 42 U.S.C. § 2000e-1 immunity analysis fails if applied because there is a genuine dispute as to material facts about whether Defendant is a "religious corporation." Defendant's analysis relies on the wrong standard. Under the correct standard, Defendant Mercy Hospital's operation of multiple for-profit sub entities and failure to operate their business as a religious corporation creates a material fact dispute about whether the entity for which Plaintiff Conway actually worked for and is entitled to § 2000 immunity.

**SUMMARY JUDGEMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), a district court may grant a motion for

1

summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the move party is entitled to judgment as a matter of law." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). Any inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Where a motion for summary judgment is founded on an affirmative defense, the moving party has the burden to present facts that establish that defense." *See Ballard v. Rubin*, 284 F.3d 957, 964 n.6 (8th Cir. 2002)." *White v. Russell*, No. 4:16-CV-886 CAS, at *7 (E.D. Mo. Jan. 7, 2019).

## I. THE RELIGIOUS CORPORATION EXEMPTION IS A NON-JURISDICTIONAL AFFIRMATIVE DEFENSE THAT MERCY BEARS THE BURDEN OF PROVING.

The religious organization exemption to Title VII's prohibition against discrimination provides that:

> "[t]his subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1.

"Title VII of the Civil Rights act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of . . . discrimination." *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) (quotation marks and citations omitted). In particular, "[s]uch liberal construction is also to be given to the definition of `employer.'" *Id.* (citation omitted). *Sandoval v. A.B.M.I*, 578 F.3d 787, 792-93 (8th Cir. 2009). In *Sandoval*, the Eight Circuit held that a close analysis of the business dealings and

2

corporate documents of the Defendant precluded summary judgement on a claim of exemption from Title VII. *Id.* at 800.

The *Sandoval* exemption at issue – for a parent company when a Title VII claim was made against their subsidiary – is similar to the one at issue in this claim. Here there is substantial evidence that Mercy is not entitled to the claimed exemption because of factual disputes relating to the degree to which Mercy is a religious corporation.

Defendant's argument treats the § 2000e-1 exemption as a jurisdictional bar to any Plaintiff asserting a Title VII claim against a religious corporation. But Courts have routinely denied that assertion. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), the Supreme Court established the "bright line" rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non jurisdictional in character."

In that case, the Plaintiff asserted a claim of discrimination, and the Defendant maintained a right to judgement as a matter of law because the employer did not have a sufficient number of employees pursuant to Title VII's numerosity requirement. *Id*. at 504. The Supreme Court held that the numerosity requirement was not a jurisdictional pre-requisite to the suit, holding in favor of the employee. *Id*. The Eighth Circuit Court of Appeals has applied that holding to other actions under Title VII, holding that the claimed exemptions under the statute do deprive the Court of jurisdiction over the dispute. *See e.g. Equal Emp't Opportunity Comm'n v. CRST Van Expedited, Inc.,* 774 F.3d 1169 (8th Cir. 2014).

Crucially, the fact that the claimed exemption is not a jurisdictional pre-requisite but rather an affirmative defense shifts the burden of proof onto the Defendant – Defendant Mercy must prove that it is a religious corporation. Although the Eight Circuit has not addressed whether the

3

religious corporation exemption is an affirmative defense, other courts have routinely held the same. "The entity seeking the benefit of the statute bears the burden of proving it is exempt." *EEOC v. Kamehameha Schs./Bishop Estate*, 990 F.2d 458, 460 (9th Cir. 1993); *Garcia v. Salvation Army*, 918 F.3d 997, 1003 (9th Cir. 2019).

Because the exemption is an affirmative defense, Plaintiff can defeat the application thereof by any method normally available for the same – including, as described below, through the doctrines of judicial estoppel and waiver.

II. **DEFENDANT'S VACCINATION PROGRAM WAS REQUIRED BY THE CMS RULES TO HAVE A RELIGIOUS EXEMPTION, AND § 2000(E) DOES NOT IMMUNIZE THIS DEFENDANT FROM COMPLIANCE WITH THE RULE.**

A. **Mercy was required to provide a religious exemption to the vaccine requirement pursuant to the CMS Rules.**

The Centers for Medicare & Medicaid Services issued a COVID-19 vaccination mandate ("CMS Mandate") on November 5, 2021, which applies to Mercy and its staff. *See Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (Nov. 5, 2021). The CMS Mandate was then upheld by the United States Supreme Court on January 13, 2022. *Biden v. Missouri*, 142 S.Ct. 647 (2022). Defendant admits that "Mercy had no other choice but to implement a vaccine mandate." Defendant's Memorandum in Support of Motion for Summary Judgement at ¶ 3, n.2.

To participate in the Medicare program and receive payment for services furnished to Medicare beneficiaries, providers such as hospitals, home-health agencies, hospices, and skilled nursing facilities must enter into a provider agreement with CMS after demonstrating that they meet the conditions for participation. 42 U.S.C. § 1395cc. Medicaid providers, likewise, voluntarily enter into provider agreements with State Medicaid agencies to be eligible for

4

participation in that program. 42 U.S.C. § 1396a(a)(27). By voluntarily entering into a provider agreement, a facility agrees that it will comply with the requirements of the Medicare and Medicaid statutes and the regulations that the Secretary issues under these statutes. *See* 42 U.S.C. § 1395cc(b)(2); *see also id*. § 1396a(p)(1).

On November 5, 2021, CMS issued the interim final rule that is the subject of this case. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg.13 61,555 (Nov. 5, 2021). "The rule *requires* providers to offer medical and religious exemptions, and does not cover staff who tele work full-time." *Biden v. Missouri*, 595 U.S. \_\_\_\_\_ (2022), No. 21A240, at *2 (Jan. 13, 2022) (emphasis added).[1]

Because the Mandate as described "requires" providers to offer religious exemptions, compliance with the same operates as a waiver of the exemption, at least for actions taken in compliance with the Mandate. As argued below, Mercy is not a religious corporation. But even if they were, their compliance with the mandate waives their right to claim exemption from Title VII.

"A waiver is the intentional relinquishment of a known right." *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996). "To rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." *Id*. (citation omitted). *Boswell v. Panera Bread Co.*, No. 4:14-CV-01833-AGF, at *30 (E.D. Mo. Mar. 24,

---

[1] The CMS Mandate includes a section entitled "vaccine exemptions." 86 Fed. Reg. at 61572. This section of the CMS Mandate acknowledges there are "Federal laws, including the ADA, section 504 of the Rehabilitation Act, section 1557 of the ACA, and Title VII of the Civil Right Act, that prohibit discrimination based on race, color, national origin, religion, disability and/or sex, including pregnancy." *Id.* The CMS Mandate recognizes that "in some circumstances, employers may be required by law to offer accommodations for some individual staff members." 86 Fed. Reg. at 61572. Accordingly, the CMS Mandate requires covered healthcare facilities to "establish and implement a process by which staff may request an exemption from COVID-19 vaccination requirements based on an applicable Federal law." *Id.* at 61572.

2016). Courts have held that failure to act consistent with the parameters of a claimed exemption is sufficiently voluntary to constitute relinquishment of the exemption. In *Mennen v. Easter Stores,* 951 F. Supp. 838 (N.D. Iowa 1997), the district court held that an employer that did not adhere to an exemption effected a forfeiture of the exemption.

In this case, Mercy has indisputably established policies and procedures for religious exemptions from the vaccine mandate. Mercy Hospital St. Louis states in their religious exemption section of their Covid-19 Vaccine Policy that exemption applicants must upload their Religious Exemption Request Form, along with a certification form from their religious leader or other person who can attest the individual's religious beliefs are sincerely held, by August 15, 2021. SOF ¶ 21. And Plaintiff Conway complied with the provisions of Mercy's policy. SOF ¶ 22. Moreover, Mercy made a number of explicit and discretionary decisions about which religious beliefs were sufficient to warrant an exemption from the vaccine. SOF ¶ 23. The Missouri Division of Unemployment Commission found that Mercy did not adhere to the standards they had established for the vaccine mandate. SOF ¶ 25.

Mercy's affirmative conduct in continuing to contract to receive Medicare reimbursement and complying with the vaccine mandate rule requiring employers to provide religious exemptions from the mandate, demonstrates an intentional relinquishment of their right to claim an exemption as a religious corporation. As a factual matter, the absence of testimony from Mercy about their exact thought process and organizational goals in promoting a religious exemption policy when they did not believe it applied to them must be developed. Because such testimony is lacking, the motion for summary judgment should be denied.

C. **<u>Mercy's failure to raise their claimed exemption from complying with the vaccine mandate's requirement that employees be allowed to claim a religious exemption should caused them to estopped them from asserting the affirmative defense.</u>**

The principle of [equitable] estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 659 (8th Cir. 1992); *see also Heckler v. Cmty. Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59 (1984) (referring to the Restatement (Second) of Torts to define equitable estoppel as warranted in situations where one person has misrepresented facts and another person reasonably relies on the misrepresentation to his or her detriment).

The doctrine of equitable estoppel has previously been applied to estop employers from asserting an affirmative defense contesting an employee's entitlement to FMLA leave. *See Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 493-94 (8th Cir. 2002) (citing *Kosakow v. New Rochelle Radiology Assocs.,* 274 F.3d 706, 724-25 (2d Cir. 2001) (affirming the district court's decision to estop an employer from asserting an affirmative defense challenging an employee's FMLA eligibility when the employer's unintentional misleading behavior caused the employee to justifiably and detrimentally rely on the FMLA leave)); *Woodford v. Cmty. Action of Greene County, Inc.,* 268 F.3d 51, 57 (2d Cir. 2001) (authorizing equitable estoppel where an employer initially provided notice of eligibility for leave and later seeks to challenge it); *Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir. 2000) (recognizing a district court's ability to equitably estop employers from asserting an affirmative defense contesting an employee's entitlement to FMLA leave in situations where the employer's words or conduct have misled the

employee into relying on the leave)) *Podkovich v. Glazer's Distributors of Iowa, Inc.*, No. C04-4104-MWB, at *26-27 (N.D. Iowa Aug. 11, 2006).

In *Duty v. Norton-Alcoa*, the Eighth Circuit Court of Appeals approved a finding by the district court that the employer could not rely upon the statutory language of the FMLA as an affirmative defense where the employer explicitly guaranteed longer leave. *Id.* at 494. In that case, the employee was fired for taking longer than 12 weeks of leave. *Id*. The Eighth Circuit found the district court's reliance upon evidence that the employee relied upon a letter from the employer guaranteeing longer than 12 weeks of leave was reasonable. *Id.*

Here, the Mercy policy for vaccinations required that employees be vaccinated by a certain date. SOF ¶ 21. The policy provided that religious exemptions would be granted provided a request was timely submitted. *Id.* Plaintiff did in fact submit her request and complied in all ways with the Mercy policy. SOF ¶ 23. As a result, she did not get the vaccine in time and was terminated. *Id.* At the unemployment hearing, the Mercy representative made no effort to claim any religious exemption from the vaccine policy mandate – suggesting that, in conformance with Plaintiff's claim, no one within Mercy had any knowledge that claims of religious exemption would not be honored. SOF ¶ 22.

On these facts, it is clear that there exists at minimum a material fact dispute about whether or not Plaintiff Conway detrimentally relied upon the Mercy vaccine policy's review of religious exemptions. Plaintiff relied on Mercy's explicit statements that it would review her claim of exemption appropriately and was terminated as a result.

**III.     EVEN IF THE CMS MANDATE IS NOT HELD TO BE THE PREDOMINANT FACTOR, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED, BECAUSE THE STANDARD FOR DETERMINING WHAT CONSTITUTES A RELIGIOUS CORPORATION IS BOTH OVERBROAD AND UNCONVINCING.**

Title VII does not define what constitutes "a religious corporation, association, educational institution, or society." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 235-36 (3d Cir. 2007); *EEOC v. Townley Eng'g Mfg. Co.*, 859 F.2d 610, 618 (9th Cir. 1988). Defendant urges the adoption of the third circuit's religious corporation test. That test is deeply flawed. The EEOC has recently taken the position that a different test from the Ninth Circuit is more appropriate. Under either test, Mercy is not a religious corporation.

A. **The *LeBoon* Test Raised by Defendant Mercy Hospital Is Not the Governing Standard Under the Eastern District of Missouri.**

Defendant Mercy Hospital relies heavily upon the criteria in *LeBoon* to establish itself as a "religious corporation" under Title VII:

> (1) whether the entity operators for a profit; (2) whether it produces a secular product; (3) whether the entities articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*See LeBoon*, 503 F.3d at 226 (3d Cir. 2007);

9

The Eastern District of Missouri has no stance on whether Mercy Hospital, or others like it, are immune from Title VII religious discrimination. In *Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011), the only mandatory authority cited in opposing counsel's memorandum, the Plaintiff asserted an age discrimination claim under the ADEA and racial discrimination claims under both Title VII and Section 1981. *Id.* at *4-5. The Court in that case granted summary judgment on her Missouri Human Rights Act claim, not her Title VII claims. *Id.* Notably, the issue of Mercy's claimed exemption from Title VII claims of religious discrimination was not even considered by the court. *Id.*

### B. **Defendant Mercy is not a Religious Corporation under the *LeBoon* test.**

But Defendant Mercy Hospital intentionally leaves out the ninth factor as inapplicable. *See* Memo in Support at *6, n.4. Mercy Hospital employs many individuals on a wide variety of religious denominations. In fact, Defendant Mercy Hospital states on the Careers page of their website:

> We're proud to create a culture that cherishes every person in the image of God. We believe the diversity of race, gender, sexual orientation, *religion*, ethnicity, nationality, status as a protected veteran and *any other unique characteristics that make us who we are should have nothing to do with our hiring practices. Join us on our journey to continue fostering an environment where inclusion is valued and leveraged*. SOF ¶ 24.

This is problematic, because Defendant Mercy Hospital attempts to use the first seven factors as a dispositive means of persuading the court to consider them as a religious corporation. In light of this observation, the *LeBoon* test appears overbroad in scope in that it allows Defendant Mercy Hospital to avail itself under § 702(a) as a "religious corporation" and still "engage in secular activities," fail to conform to "the strictest tenets" of its faith, declare its

10

intention not to discriminate even while doing just that, and, finally, hire persons who subscribe to other faiths while reserving the right to fire those same employees, solely on the basis of their religion, should it choose to do so at some point in the future. *LeBoon*, 503 F.3d at 238.

In this case, Mercy fails to be a religious corporation even under the *LeBoon* test. Mercy does not regularly conduct worship activities for the vast majority of its employees. SOF ¶ 28. Mercy made nearly $10,000,000.00 in profit not related to their non-profit status during the time that Plaintiff Conway worked there. *Id.* at ¶ 18. Mercy does not train nor educate its workers in the Catholic faith. *Id.* at ¶ 16. Mercy does not hold regular worship services. *Id.* at ¶ 16. The majority of workers at Mercy are not Catholic. *Id.* at ¶ 15. At no time prior to the vaccine mandate did Mercy discuss religion with its workers in any way. *Id.* at ¶ 18.

On the basis of the flawed *Leboon* test, there is clearly a material dispute as to whether Mercy is indeed a religious corporation. Indeed, factors 1, 2, 7, 8 and 9 all favor a conclusion that Mercy is not a religious corporation for the purposes of Title VII.

C. <u>Leboon is overbroad.</u>

In *Spencer v. World Vision, Inc.,* 633 F.3d 723 (9th Cir. 2010), the court finds troubling overbreadth with the *LeBoon* test. *See id.* at 730-32. Additionally, the court highlights the issue of non-profit institutions with church affiliations using their affiliations as a cover for religious discrimination in secular employment. *Id.* at 745. In fact, Judge Kleinfeld's concurrence in *Spencer* raises a chilling hypothetical that is identical to the current matter against Mercy Hospital:

> [P]hysicians may organize a hospital as a nonprofit affiliated with a church, stating a religious purpose of healing the sick in its articles and bylaws. The hospital may then charge full market prices to patients and their insurers, and pay the physicians who organized it and their employees around

11

> $50,000 a year for residents, $200,000 a year for employed physicians working a week on, week off, and $400,000 a year for radiologists. It can defend its stated religious purpose with the true argument that whatever church it affiliates with promotes healing the sick as a religious duty. Yet the non-profit hospital differs from a for profit hospital only in that the board does not have to concern itself with pesky stockholders and does not have to pay income taxes on the excess of revenues over expenses and depreciation. <u>The free exercise concern protected by the exemption does not suggest that the hospital should be allowed to discriminate by religion in hiring, since physicians, nurses, and other employees can perform their tasks equally well regardless of their religious beliefs.</u> *See id.* at 746. (Emphasis supplied).

Thus, both *Spencer* and Judge Rendell's dissent in *LeBoon* raise the insufficiency of this majority test in analyzing the closeness of a corporation's formal relationship with a particular religious group that go beyond structure and religious symbolism. This open question of law supplements Plaintiff's clear demonstration of a material fact dispute, and shows that Defendant Mercy Hospital's cannot establish a right to summary judgement at this stage. *Compare id.* at 730-32, 734, 746-48 *with LeBoon*, 503 F.3d at 238.

### D. The *Spencer* Test is the Preferred Standard

On December 9, 2020, OFCCP published its Final Rule in the Federal Register, updating OFCCP's Rules re religious discrimination. 85 Fed. Reg. at 79324. The Final Rule adds definitions for the terms "Particular religion," "Religion," "Religious corporation, association, educational institution, or society," and "Sincere." *Id.* at 79330. Most importantly, OFCCP's definition of "Religious corporation, association, educational institution, or society" adopts a modified view of the Ninth Circuit Court of Appeals' test used in *Spencer* to determine the conditions a federal Contractor must satisfy to be eligible for the religious exemption. *Id.* at 79331-33.

12

Under *Spencer*, an entity is a "religious corporation, association, or society," determine when it is: (1) organized for a religious purpose, (2) is engaged primarily in carrying out that religious purpose, (3) holds itself out to the public as an entity for carrying out that religious purpose, and (4) does not engage primarily or substantially in the exchange of goods or services for money beyond nominal amounts. *See Spencer*, 633 F.3d at 748. How an institution charges offers an objective test for sorting out which institutions are designed to exchange goods or services for money, from those designed to give them away except perhaps for nominal charges in order to serve a religious objective. *Id.* at 747. This objective measure relates closely to the purpose of the exemption. *Id.* A religious purpose may be a motive, or money may be a motive, for work that serves others. *Id.* If money is not available as an incentive, that is strong evidence, in the purportedly religious institution, that exercise of religion is the objective. *Id.* On the other hand, if satisfaction of a religious purpose is insufficient to motivate the performance, then the performance may be consistent with religion but not motivated by it. *Id.*

Here, Defendant Mercy Hospital would not qualify as a religious organization under this test. Mercy received at minimum $3,207,180 in taxable income during the years 2017-2019. SOF ¶ 21. Mercy had an equity interest in at least 28 for profit sub entities during 2019. SOF ¶ 22. The majority of workers at Mercy are not Catholic. SOF ¶ 4. Plaintiff herself regularly worked with and was employed by Mercy for-profit entities. SOF ¶ 3. Plaintiff was never instructed on Catholic doctrine nor asked in any way about her religion while she worked at Mercy. SOF ¶ 5.

The only time Mercy interacted with their employees in any religious way was when they were *ordered to* by the CMS Mandate. SOF ¶ 5. Even then, the majority of their workers had no religious interaction with Mercy at all. In fact, during the administrative appeal of Plaintiff's

13

claim for unemployment benefits, the worker representing Mercy made no reference at all to the hospitals religious organization status. SOF ¶ 34.

## CONCLUSION

For the forgoing reasons, Plaintiff asserts that Defendant's argument for summary judgment on the basis of being exempt as a religious corporation from Title VII religious discrimination must fail.

Respectfully submitted,

**OTT LAW FIRM**

_____
Joseph A. Ott, #67889

_____
Mark E. Blankenship Jr., #73123

3544 Oxford Blvd
Maplewood, MO 63143
Telephone:  (314) 293-3756
Facsimile:  (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

COMES NOW Plaintiff Conway by and through undersigned attorney, and hereby certifies that the forgoing was served via the courts e-filing system and email on this 6th Day of April 2023 to:

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
James M. Paul, MO 44232
Thomas R. Chibnall, MO 67994
7700 Bonhomme Avenue, Suite 650
St. Louis MO, 63105
Telephone: 314.802.3935
Facsimile: 314.802.3960
james.paul@ogletree.com
thomas.chibnall@ogletree.com
*Attorneys for Defendant*

          /s/       Mark E. Blankenship Jr.