# Mercy

## Request for Religious Exemption from COVID-19 Vaccination
### Religious Leader / Attestor Certification Form

Co-worker Name: **Patricia L Conway**

Mercy is committed to protecting its patients, co-workers, physicians, volunteers, and the public from COVID-19 and, thus, requires all co-workers to receive the COVID-19 vaccination. A religious exemption may be granted to accommodate sincerely held religious beliefs that prohibit an individual from obtaining the COVID-19 vaccination. The individual identified above is requesting a religious exemption from this vaccination. Your supporting statements will assist us in evaluating this request. Please complete the information below for the above-named individual.

I CERTIFY that the above-named individual has the following sincerely held religious beliefs requiring exemption from the COVID-19 vaccination (attach additional pages if necessary):

Please see attached forms.

Church or Religious Body: **True Hope Ministry**

Actions other than refusal to obtain vaccinations that demonstrate the above-named individuals sincerely held religious objection to the COVID-19 vaccination:

I AUTHORIZE Mercy to contact me directly for additional information and/or clarification about my knowledge of the above-named individual's religious beliefs and objections to the COVID-19 vaccination.

Print Name: Patricia L Conway
Signature: Patricia L Conway
Date: 7-29-2021                Phone Number: 314-341-2235

Page 8 of 8

Version: 1

Any printed form of this document is an Uncontrolled Copy and may not be the most current version.

Exhibit 11

July 29, 2021

To Whom it May Concern @ Mercy Vaccine Exemptions,

I am writing to request a religious exemption from the covid vaccine.

Participating in a medical experiment, such as a covid vaccine is a violation of my sincerely held religious beliefs. Covid vaccines have an *emergency authorization* by the FDA, and not an *approval*. Therefore, these are experimental treatments, and I have the right to refuse consent – without being discriminated against, such as being terminated or given a different assignment.

According to the FDA, https://www.fda.gov/vaccines-blood-biologics/vaccines/emergency-use-authorization-vaccines-explained

*FDA must ensure that recipients of the vaccine under an EUA are informed, to the extent practicable given the applicable circumstances, that FDA has authorized the emergency use of the vaccine, of the known and potential benefits and risks, the extent to which such benefits and risks are unknown, that* **they have the option to accept or refuse the vaccine**, *and of any available alternatives to the product.*

It is my sincere belief that I am a Sovereign Being, the greatest law of the Universe is Free Will. My body my choice. The body is the temple of the Holy Spirit and as such, should not be used for medical experimentation. It is against my faith to inject a DNA altering substance into my bloodstream; my Creator made me in His image. Also it is against my belief to use recombinant RNA, from aborted fetal cell line tissue because of the sanctity of life and the Law of the Old Testament. Further, the substances in the test and the vaccine are possibly harmful to the human body, and we are called to protect the body and not participate in *pharmacopeia*.

That means I do not consent to covid vaccines of any kind.

There is no evidence that I am carrying an infectious disease, so I cannot be defined as a "direct threat" because this has not been established and is therefore not valid. A licensed medical doctor who has examined me would have to determine that I am a threat and since there is no court order of quarantine against me, there is no evidence that I am a threat to others.

The burden of proof to refuse to accommodate my sincerely held religious belief is set at a very strict standard. According to law, stereotypes and generalizations are not valid evidence. To say that I am a threat to the health and safety of others simply due to my refusal of vaccination is akin to saying all Muslims are threats to the health and safety of others because they might be terrorists.

No emergency, pandemic, health orders, executive orders, school policies, rules, recommendations, regulations, guidelines, directives, or measures suspend Constitutional rights.

Exhibit 11

No statute of law has been passed by the U.S. Congress that gives an exemption to any institution, facility, corporation, business, or group to allow for my rights to be violated.

No president's orders supersede the Constitution.

I look forward to your constitutionally valid reply.

Sincerely,

*Patricia L Conway RN*

Patricia L Conway, RN

CC: Department of Justice, Civil Rights Division

EEOC

Exhibit 11



# TRUE HOPE MINISTRY
205 Avenida Del Mar #681 San Clemente, CA 92674

As an ordained Pastor and head of TRUE HOPE Ministry since 2011, I am writing to affirm Patricia L Conway's sincerely held religious objection to covid vaccines.

For the purpose of seeking a religious exemption, the organization receiving the request may only make a *reasonable inquiry* into the sincerity of the individual's claim. This letter provides above and beyond what is required or expected in seeking a religious exemption. According to Title VII of the Civil Rights law, RELIGIOUS BELIEFS MUST BE ACCOMODATED.

Please note that every believer is a member of the Body of Christ, regardless of one's geographic region. The individual for whom I am providing this letter of attestation does not have to prove any attendance in any particular church, length of time of religious conviction, nor does one's sincerely held religious belief have to be aligned with any formal religion according to state and federal laws. Again, the federal law protects each individual's right to one's religious and/or sincerely held ethical or moral beliefs.

Regarding covid vaccines, they are under an "emergency use authorization" by the FDA which places them in the category of a medical experiment. Aside from the fact that majority of vaccines like flu and meningitis vaccines are completely unreliable, they are also known to contain harmful substances that harm the body. Vaccines, particularly covid vaccines are intrusive and unnecessary in the eyes of a Christian. As believers, we know that the body is the temple of the Holy Spirit and as such, should not be used for medical experimentation. We are called to protect the body and not participate in *pharmakeia*.

*"Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?"* (1 Cor 6:19)

Overall, it does not matter whether or not the vaccines are under an emergency use authorization or gain complete FDA approval. What matters is that it is an affront to a Christian to inject their body with a man-made substance in an effort to "improve" the immune system. God has already created the body with mechanisms to ward off disease.

For any believer who may have had childhood vaccines or even a recent flu vaccine, that does not contradict the person's desire to decline the covid vaccine. Some people may not have been aware that many of these vaccines have been cultured in aborted fetal tissue and carry the DNA of a male aborted baby. This is appalling to any believer.

The law states that a person's activities – what activities they participate in, and what activities they refrain from, are a part of one's religious expression. "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice that are part of an individual observing a religious creed.

Taking a vaccine is an affront to Patricia L Conway's sincerely held religious beliefs. I concur with and affirm her sincerely held religious beliefs and, therefore, attest that Patricia L Conway has the lawfully protected right to seek a religious exemption from activities that are offensive to her sincerely held religious beliefs.

SIGNED: *David W Hall*
PASTOR DAVID W. HALL

Exhibit 11

# EEOC STATES RELIGIOUS BELIEFS MUST BE ACCOMMODATED

https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftn177

**EXAMPLE 14 Employment Decision Based on Customer Preference**

Harinder, who wears a turban as part of his Sikh religion, is hired to work at the counter in a coffee shop. A few weeks after Harinder begins working, the manager notices that the work crew from the construction site near the shop no longer comes in for coffee in the mornings. When he inquires, the crew complains that Harinder, whom they mistakenly believe is Muslim, makes them uncomfortable in light of the September 11th attacks. The manager tells Harinder that he has to let him go because the customers' discomfort is understandable. The manager has subjected Harinder to unlawful religious discrimination by taking an adverse action based on customers' preference not to have a cashier of Harinder's perceived religion. Harinder's termination based on customer preference would violate Title VII regardless of whether he was Muslim, Sikh, or any other religion.

## 12-III HARASSMENT

**Overview:** Religious harassment is analyzed and proved in the same manner as harassment on other Title VII bases, e.g., race, color, sex, or national origin.[70] However, the facts of religious harassment cases may present unique considerations, especially where the alleged harassment is based on another employee's religious practices – a situation that may require an employer to reconcile its dual obligations to take prompt remedial action in response to alleged harassment and to accommodate certain employee religious expression.

### A. Prohibited Conduct

Religious harassment in violation of Title VII occurs when employees are: (1) required or coerced to abandon, alter, or adopt a religious practice as a condition of employment (this type of "quid pro quo" harassment may also give rise to a disparate treatment or denial of accommodation claim in some circumstances),[71] or (2) subjected to unwelcome statements or conduct that is based on religion and is so severe or pervasive that the individual being harassed reasonably finds the work environment to be hostile or abusive, and there is a basis for holding the employer liable.[72]

Exhibit 11

1. Religious Coercion That Constitutes a Tangible Employment Action

Title VII is violated when an employer or supervisor explicitly or implicitly coerces an employee to abandon, alter, or adopt a religious practice as a condition of receiving a job benefit or avoiding an adverse action.[73]

2. Hostile Work Environment

Title VII's prohibition against religious discrimination can also be violated if the employee is subjected to a hostile work environment because of religion.[77] An unlawful hostile environment based on religion might take the form of either verbal or physical harassment or unwelcome imposition of religious views or practices on an employee.  A hostile work environment is created when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[78] To establish a case of religious harassment, an employee must show that the harassment was:  (1) based on his religion; (2) unwelcome; (3) sufficiently severe or pervasive to alter the conditions of employment by creating an intimidating, hostile, or offensive work environment; and, (4) that there is a basis for employer liability.[79]

## A. BASED ON RELIGION

To support a religious harassment claim, the adverse treatment must be based on religion.[80] This standard can be satisfied regardless of whether the harassment is motivated by the religious belief or observance – or lack thereof – of either the harasser or the targeted employee.  Moreover, while verbally harassing conduct clearly is based on religion if it has religious content, harassment can also be based on religion even if religion is not explicitly mentioned.[81]

A. Religious Accommodation

A reasonable religious accommodation is any adjustment to the work environment that will allow the employee to comply with his or her religious beliefs.  However, it is subject to the limit of more than *de minimis* cost or burden.  The need for religious accommodation most frequently arises where an individual's religious beliefs, observances, or practices conflict with a specific task or requirement of the job or the application process.  The employer's duty to accommodate will usually entail making a special exception from, or adjustment to, the particular requirement so that the employee or applicant will be able to practice his or her religion.  Accommodation

Exhibit 11

requests often relate to work schedules, dress and grooming, or religious expression or practice while at work.

### 1. Notice of the Conflict Between Religion and Work

An applicant or employee who seeks religious accommodation must make the employer aware both of the need for accommodation and that it is being requested due to a conflict between religion and work. The employee is obligated to explain the religious nature of the belief or practice at issue, and cannot assume that the employer will already know or understand it.[119] Similarly, the employer should not assume that a request is invalid simply because it is based on religious beliefs or practices with which the employer is unfamiliar, but should ask the employee to explain the religious nature of the practice and the way in which it conflicts with a work requirement.

No "magic words" are required to place an employer on notice of an applicant's or employee's conflict between religious needs and a work requirement. To request an accommodation, an individual may use plain language and need not mention any particular terms such as "Title VII" or "religious accommodation." However, the applicant or employee must provide enough information to make the employer aware that there exists a conflict between the individual's religious practice or belief and a requirement for applying for or performing the job.[120]

### 3. What is a "Reasonable" Accommodation?

Although an employer never has to provide an accommodation that would pose an undue hardship, see infra § IV-B, the accommodation that is provided must be a reasonable one. An accommodation is not "reasonable" if it merely lessens rather than eliminates the conflict between religion and work, provided eliminating the conflict would not impose an undue hardship.[129] Eliminating the conflict between a work rule and an employee's religious belief, practice, or observance means accommodating the employee without unnecessarily disadvantaging the employee's terms, conditions, or privileges of employment.[130]

"An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy."[138] Thus, the fact that an employee acquiesces to the employer's work rule, continuing to work without an accommodation after the employer has denied the request, should not defeat the employee's legal claim.[139]

Exhibit 11

### B. Undue Hardship

An employer can refuse to provide a reasonable accommodation if it would pose an undue hardship. Undue hardship may be shown if the accommodation would impose "more than *de minimis* cost" on the operation of the employer's business.[141] The concept of "more than *de minimis* cost" is discussed below in subsection 2. Although the employer's showing of undue hardship under Title VII is easier than under the ADA, the burden of persuasion is still on the employer.[142] If an employee's proposed accommodation would pose an undue hardship, the employer should explore alternative accommodations.

### 2. More than "*De Minimis*" Cost

To establish undue hardship, the employer must demonstrate that the accommodation would require more than *de minimis* cost.[148] Factors to be considered are "the identifiable cost in relation to the size and operating costs of the employer, and the number of individuals who will in fact need a particular accommodation."[149] Generally, the payment of administrative costs necessary for an accommodation, such as costs associated with rearranging schedules and recording substitutions for payroll purposes or infrequent or temporary payment of premium wages (*e.g.*, overtime rates) while a more permanent accommodation is sought, will not constitute more than *de minimis* cost, whereas the regular payment of premium wages or the hiring of additional employees to provide an accommodation will generally cause an undue hardship to the employer.[150] "[T]he Commission will presume that the infrequent payment of premium wages for a substitute or the payment of premium wages while a more permanent accommodation is being sought are costs which an employer can be required to bear as a means of providing reasonable accommodation."[151]

### EXAMPLE 35 Religious Need Can Be Accommodated

David wears long hair pursuant to his Native American religious beliefs. David applies for a job as a server at a restaurant which requires its male employees to wear their hair "short and neat." When the restaurant manager informs David that if offered the position he will have to cut his hair, David explains that he keeps his hair long based on his religious beliefs, and offers to wear it in a pony tail or held up with

Exhibit 11

a clip. The manager refuses this accommodation, and denies David the position based on his long hair. Since the evidence indicated that David could have been accommodated, without undue hardship, by wearing his hair in a ponytail or held up with a clip, the employer will be liable for denial of reasonable accommodation and discriminatory failure to hire.

### EXAMPLE 36 Safety Risk Poses Undue Hardship

Patricia alleges she was terminated from her job as a steel mill laborer because of her religion (Pentecostal) after she notified her supervisor that her faith prohibits her from wearing pants, as required by the mill's dress code, and requested as an accommodation to be permitted to wear a skirt. Management contends that the dress code is essential to the safe and efficient operation of the mill, and **has evidence that it was imposed following several accidents** in which skirts worn by employees were caught in the same type of mill machinery that Patricia operates. **Because the evidence establishes that wearing pants is truly necessary for safety reasons, the accommodation requested by Patricia poses** an undue hardship.[156]

### EXAMPLE 38 Accommodation Implicating Security Concerns

Patrick is employed as a correctional officer at a state prison, and his brother William is employed as a grocery store manager. Both Patrick and William seek permission from their respective employers to wear a fez at work as an act of faith on a particular holy day as part of their religious expression. Both employers deny the request, citing a uniformly applied workplace policy prohibiting employees from wearing any type of head covering. The prison's policy is based on security concerns that head coverings may be used to conceal drugs, weapons, or other contraband, and may spark internal violence among prisoners. The grocery store's policy is based on a stated desire that all employees wear uniform clothing so that they can be readily identified by customers. If both brothers file EEOC charges challenging the denial of their accommodation requests, Patrick will likely not prevail because the prison's denial of his request was based on legitimate security considerations posed by the particular religious garb sought to be worn. William will likely prevail because there is no indication it would pose an undue hardship for the grocery store to modify its policy with respect to his request.[165]

Exhibit 11

**EXAMPLE 39 Kirpan**

Harvinder, a baptized Sikh who works in a hospital, wears a small (4-inch), dull and sheathed kirpan (miniature sword) strapped and hidden underneath her clothing, as a symbol of her religious commitment to defend truth and moral values. When Harvinder's supervisor, Bill, learned about her kirpan from a co-worker, he instructed Harvinder not to wear it at work because it violated the hospital policy against weapons in the workplace. Harvinder explained to Bill that her faith requires her to wear a kirpan in order to comply with the Sikh Code of Conduct, and gave him literature explaining that the kirpan is a religious artifact, not a weapon. She also showed him the kirpan, allowing him to see that it was no sharper than butter knives found in the hospital cafeteria. Nevertheless, Bill told her that she would be terminated if she continued to wear the kirpan at work. Absent any evidence that allowing Harvinder to wear the kirpan would pose an undue hardship in the factual circumstances of this case, the hospital is liable for denial of accommodation.[166]

## C. Common Methods of Accommodation in the Workplace

Under Title VII, an employer or other covered entity may use a variety of methods to provide reasonable accommodations to its employees. The most common methods are: (1) flexible scheduling; (2) voluntary substitutes or swaps of shifts and assignments; (3) lateral transfer and/or change of job assignment; and, (4) modifying workplace practices, policies, and/or procedures.

### 1. Scheduling Changes

An employer may be able to reasonably accommodate an employee by allowing flexible arrival and departure times, floating or optional holidays, flexible work breaks, use of lunch time in exchange for early departure, staggered work hours, and other means to enable an employee to make up time lost due to the observance of religious practices.[167] However, EEOC's position is that it will be insufficient merely to eliminate part of the conflict, unless eliminating the conflict in its entirety will pose an undue hardship by disrupting business operations or impinging on other employees' benefits or settled expectations.

### 4. Modifying Workplace Practices, Policies and Procedures

Exhibit 11

## A. DRESS AND GROOMING STANDARDS

When an employer has a dress or grooming policy that conflicts with an employee's religious beliefs or practices, the employee may ask for an exception to the policy as a reasonable accommodation.[181] Religious grooming practices may relate, for example, to shaving or hair length. **Religious dress may include clothes, head or face coverings,** jewelry, or other items. Absent undue hardship, ==religious discrimination may be found where an employer fails to accommodate the employee's religious dress or grooming practices.==[1]

### EXAMPLE 47 Religious Garb

Nasreen, a Muslim ticket agent for a commercial airline, wears a head scarf, or hijab, to work at the airport ticket counter. After September 11, 2001, her manager objected, telling Nasreen that the customers might think she was sympathetic to terrorist hijackers. Nasreen explains to her manager that wearing the hijab is her religious practice and continues to wear it. She is terminated for wearing it over her manager's objection. Customer fears or prejudices do not amount to undue hardship, and the refusal to accommodate her and the termination, therefore, violate Title VII. In addition, denying Nasreen the position due to perceptions of customer preferences about religious attire would be disparate treatment based on religion in violation of Title VII, because it would be the same as refusing to hire Nasreen because she is a Muslim. *See supra* § II-B.[185]

ADDITIONAL LAWSUITS AT SUPREME COURT UPHOLDING RELIGIOUS RIGHTS

https://www.aclu.org/press-releases/sikh-student-wins-right-join-rotc-beard-long-hair-andturban

https://www.justice.gov/crt/religious-freedom-focus-volume-87-july2020#prisoners

https://www.justice.gov/crt/religious-freedom-focus-volume-87-july2020#supremecourt

https://www.justice.gov/crt/religious-freedom-focus-volume-87-july2020

https://www.justice.gov/opa/press-release/file/1001891/download

Exhibit 11