IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01113-RLW |
| | ) | |
| MERCY HOSPITAL ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Mercy Hospital St. Louis ("Defendant" or "Mercy") is entitled to summary judgment as a matter of law. Plaintiff has admitted ***all*** of the facts presented by Defendant in its Statement of Uncontroverted Facts. *See* Doc. No. 16]. While Plaintiff might disagree with the law (or might misunderstand it), her admissions definitively demonstrate that Mercy is a religious organization entitled to Title VII's exemption that protects it from religious discrimination and retaliation claims. Plaintiff attempts to argue that this Court should apply a different legal standard, but the case upon which she relies actually bolsters Mercy's arguments.

Plaintiff attempts to create disputes of facts, primarily by bloating the record with additional ***immaterial*** facts and her self-serving and ineffective declaration.[1] However, Plaintiff's proffered material facts are simply not pertinent to the determination of whether or not Defendant is a religious organization for purposes of a religious discrimination claim brought pursuant to Title VII. Moreover, Plaintiff opposition to summary judgment and her additional statement of facts is riddled with red herrings, blatant falsehoods, and sloppy and incorrect citations. And,

---

[1] *See, e.g., Pace v. Wells Fargo Bank, N.A.*, No. 4:11-CV-489 CAS, 2012 WL 3705088, at *6 (E.D. Mo., Aug. 27, 2012) (*citing Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006), which holds that "a properly supported motion for summary judgment is not defeated by a self-serving affidavit.")

1

Plaintiff's attempt to suggest that Mercy operates for-profit subsidiaries lacks any evidentiary foundation and consist of wild conjectures. More importantly, however, it conflicts with her own admission that Mercy is a non-profit, religious organization. Plaintiff either misunderstands (or purposefully misrepresents) Mercy's tax filings when stating to this Court that Mercy's investments in unrelated investment funds somehow constitute "for-profit subsidiaries" of Mercy.

Finally, Plaintiff makes a creative argument that Defendant's compliance with the CMS vaccine mandate or its equal employment opportunity policy and non-discriminatory provision of healthcare services to patients somehow constitutes a waiver of its religious organization exemption that is provided by Title VII. However, someone else already made this creative argument but was shot down, as addressed below.

In the end, despite Plaintiff's desperate attempts to overcome Mercy's material facts (now admitted by Plaintiff), Mercy is a religious organization, and, therefore, exempt from liability for alleged religious discrimination and retaliation pursuant to Title VII.

**A. Plaintiff admits all material facts that demonstrate Mercy is a religious organization.**

Plaintiff admits that Mercy: (i) is a public juridic person, (ii) founded by the Catholic nuns of the Sister of Mercy, (iii) according to Catholic Church's canon laws, and (iv) through which the Catholic Church performs healthcare services and mission work. *See* Doc. No. 20 at ¶¶ 1-4.

Plaintiff further admits that Defendant Mercy Hospital St. Louis is a wholly-owned subsidiary of Mercy Health East Communities, which is a wholly-owned subsidiary of Mercy Health, which is the civil business entity directly formed by the Catholic Church's public juridic person (i.e., Mercy Health Ministries) to perform healthcare services consistent with the mission and purpose of the Roman Catholic Church. *Id.* at ¶¶ 4-5.

Nor does Plaintiff dispute that Mercy's mission statement is as follows: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service." *Id.* at ¶¶ 6.

Furthermore, Plaintiff concedes that Mercy and all of its affiliated entities and subsidiaries are listed in the Official Catholic Directory, own property in the name of the Catholic Church, are tax-exempt based on their inclusion in the Official Catholic Directory, have four Catholic nuns on the ultimate parent organization's Board of Directors, and are subject to the Articles of Incorporation dictating their purpose as continuing the healing acts of Jesus Christ in accordance with the doctrines and tenets of the Catholic Church. *Id.* at ¶¶ 7-9.

Plaintiff additionally agrees that Mercy adheres to the Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Bishops, receives monetary funding from the Catholic Church through its various Catholic Dioceses where facilities are located, adorns its facilities with religious imagery and provides daily prayers. *Id.* at ¶¶ 10-12.

Finally, and perhaps most importantly, Plaintiff concedes that the Missouri Commission on Human Rights (the state agency with the authority and expertise to make this determination) has consistently declared that Mercy and all of its subsidiaries and affiliates are organizations "owned or operated by the Catholic Church." *Id.* at ¶¶ 13.

The clear legal effect of these admissions is that Title VII exempts Mercy from its religious discrimination and retaliation prohibitions. *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007), outlined in Mercy's opening brief and below, dictates this result and precludes a contrary finding.

**B. *LeBoon* is the correct standard.**

Plaintiff states that *LeBoon* is not the governing standard in this Court. However, that is merely because this Court has not yet had occasion to address what constitutes a religious

3

organization under Title VII. This Court came very close, in *Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011), by holding that Mercy was "owned and operated by a religious or sectarian group and was not covered under the MHRA." Now, especially because the Third Circuit's *LeBoon* test has been followed by district courts in several other circuits, including those in the Fifth, Eighth, Tenth and Eleventh Circuits[2], this Court should directly apply the *LeBoon* test and hold that Mercy is exempt from the religious discrimination and retaliation provisions of Title VII.

Somehow believing the test is different or better, Plaintiff urges this Court to adopt the test articulated by the Ninth Circuit Court of Appeals in *Spencer v. World Vision, Inc.*[3] However, even using the *Spencer* test, Mercy must be categorized as an exempt religious organization. Plaintiff relies almost exclusively on a hypothetical in a concurring opinion in *Spencer*, thereby seemingly trying to ignore the Ninth Circuit's actual holding, *i.e.*, that World Vision, Inc. was an exempt religious organization.

In the end, the Ninth Circuit upheld a summary judgment decision and affirmed the defendant's status as a religious organization. *Spencer v. World Vision, Inc.*, 633 F.3d 723, 741 (9th Cir. 2011). In its attempt to avoid certain constitutional concerns – and noting as *LeBoon* did

---

[2] The *LeBoon* factors are well-recognized by the federal courts. *See Scaffidi v. New Orleans Mission, Inc.*, 612 F.Supp.3d 630 (E.D. La. 2020); *Bear Creek Bible Church v. E.E.O.C.*, 571 F.Supp.3d 571 (N.D. Texas, 2021); *Saeemodarae v. Mercy Health Services*, 456 F.Supp.2d 1021, 1039 (N.D. Iowa 2006) (holding "Mercy is a 'religious organization' entitled to assert the exemption to Title VII religious discrimination claims, including retaliation claims, set forth in § 2000e-1(a)); *Braun v. St. Pius X Parish*, 827 F.Supp.2d 1312 (N.D. Okla. 2011); *Smith v. Angel Food Ministries, Inc.*, 611 F.Supp.2d 1346, 1350-51 (M.D. Ga. 2009) (indicating that the *LeBoon* test is applicable to this issue).

[3] The tests proposed in *Spencer* have not gained traction nor has it been utilized beyond the Ninth Circuit, as there was no consensus on what the factors or test should be. Even within *Spencer*, the panel disagreed as to the proper test to apply, as all three judges articulated different tests. Judge O'Scannlain articulated the three part test as described herein: (1) whether the entity was organized for a religious purpose, (2) was engaged in activity consistent with and in furtherance of that religious purpose, and (3) held itself to the public as religious. *Spencer*, 633 F.3d at 734. While Judge Kleinfeld believed that a fourth factor should be added: whether the organization had to refrain from engaging "primarily or substantially in the exchange of goods or services for money beyond nominal amounts." *Id.* at 748. Lastly, Judge Berzon's dissent argued that the test should only be whether the primary activity of a purportedly religious organization consists of voluntary gathering for prayer or religious learning. *Id.* at 763.

that all factors are not weighed the same or dispositive – *Spencer* pared down the *LeBoon* factors and offered three factors for considering religious organization status: (1) whether the entity was organized for a religious purpose; (2) whether the entity engaged in acts in furtherance of its religious purposes; and (3) whether it holds itself out to the public as religious. *Id.* at 734. *Spencer* did not wholly abandon *LeBoon* or invalidate it; rather, it simply attempted to condense the factors based upon the specific circumstances and facts presented.

Here, based on Plaintiff's own admissions – and no matter whether the *LeBoon* test or the *Spencer* test is applied – Mercy is an exempt religious organization. As indicated above, Plaintiff admits that Mercy was organized for a religious purpose through its founding by the Sisters of Mercy and based on its Mission: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exception service." *See* Doc. No 20, ¶¶ 1-6. Therefore, Mercy fulfills the Spencer test's factor #1.

Plaintiff admits that Mercy engages in acts in furtherance of its religious purposes. *See* Doc. No 20, ¶¶ 7-12. Mercy fulfills the Spencer test's factor #2.

Finally, Plaintiff admits that Mercy holds itself out to the public as a religious organization. *See* Doc. No 20, ¶¶ 1-12). Successfully meeting the last requirement, Mercy fulfills the Spencer test's factor #3.

Plaintiff focuses her attention on the theory that because Mercy charges more than "nominal amounts" for medical services, it is somehow disqualified from being a religious organization. However, Plaintiff has admitted that Mercy is a non-profit religious organization, one founded by the Sisters of Mercy, operated by the Catholic Church, and visibly holding itself out to be a ***Catholic*** hospital. (Doc. 20, ¶11). More importantly, Plaintiff has put forth no evidence showing the costs of medical services at Mercy. Plaintiff's theory appears to be that Defendant's medical services are not religious (even though they are governed by the Ethical and Religious

Directives of the Catholic Church) merely because Mercy receives normal payments or health insurance reimbursements for its services. Plaintiff seems to suggest that only hospitals who offer medical services for free or for only "nominal" amounts can be considered religious organizations. However, the cost of services is completely immaterial and irrelevant to a determination as to whether an organization is religious under both the *LeBoon* and the *Spencer* tests. Nonetheless, Mercy provides significant and substantial amounts of healthcare services at no charge and continues to do so. *See* Doc. No. 23 at ¶ 5.

Moreover, it should be plainly obvious that in order to provide excellent healthcare services, Mercy needs to recruit and compensate excellent physicians, nurses, other healthcare providers, administrative employees, operational employees, and healthcare management executives (not to mention attorneys) to run its operations and further it charitable purpose and its religious Mission and Ministry.

Plaintiff attempts to circumnavigate the ultimate holding in *Spencer*, by relying upon a hypothetical found in the concurrence.[4] Moreover, despite Plaintiff's assertions otherwise, the hypothetical presented is not analogous to Mercy's situation, as Mercy's medical services are directly dictated by the Catholic Church.

Plaintiff's only remaining "Hail Mary" lobbed to support her arguments against summary judgment in favor of Mercy is that Mercy received over $3 million in taxable income and has "for

---

[4] This hypothetical is not analogous to Mercy as it has shown much, much more than the mere "affiliation" with a church. Mercy is not merely affiliated with the Church, but was founded by a religious Order, the Sisters of Mercy, who are themselves an actual part of the Catholic Church. *See* Doc. No. 20 at ¶ 2. Moreover, the Catholic Church actually owns Mercy and issues healthcare directives, which determine what healthcare services can be offered and which Mercy must follow. These are the Ethical and Religious Directives for Catholic Health Care Services issued by the United States Conference of Bishops. *See* Doc. No. 20 at ¶ 10. Moreover, Mercy's Board of Directors has religious women, the Sisters of Mercy, on its Board (as required by its Bylaws) and is beholden to the Roman Catholic Church. *See* Doc. 20 at ¶¶ 1, 7-9. All assets, including real estate, are owned by the Catholic Church and must be used only in accordance with Mercy Health's Bylaws. *See* Doc. 20 at ¶¶ 1-7. Any significant purchase or divestment of these assets must be approved by the Catholic Church. See Doc. 17 at ¶¶ 16-17.

profit equity interests in at least 28 sub entities. *See* Doc. No. 20 at ¶¶ 20-22. However, these allegations are not only untrue, but also clear misrepresentations of fact. The entities that Plaintiff asserts are for-profit sub entities of Mercy are in fact various investment funds, which are not owned at all by Mercy.[5] *See* Doc. No. 23 at ¶ 9. These investments are independent of Mercy and do not affect its non-profit, tax-exempt or religious statuses. *Id.*

Even if Mercy engaged in secular, "for profit" activity (it does not, and there is no competent evidence in the record before this Court to suggest it does), such activity would not diminish – much less destroy – its religious organization status. *See Saeemodorae v. Mercy Health Services*, 456 F.Supp.2d 1021, 1038 (N.D. Iowa, 2006) (citing *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000), which held the fact that the institution trained its students in a secular profession, *i.e.*, health care, did not transform the institution into one that was secular).

In any event, Plaintiff fails to overcome her own admissions, including but not limited to the facts that Mercy is a non-profit organization, owned and operated by the Catholic Church. Accordingly, Mercy is entitled to summary judgment in its favor based on its qualification for the Title VII religious organization exemption.

### C. Mercy cannot waive its religious organization exemption under Title VII.

If Title VII's religious exemption applies to Mercy (which it does), then Mercy is entitled to summary judgment as a matter of law on all of Plaintiff's claims. It is undisputed that Title VII generally exempts religious organizations such as Mercy from religious discrimination claims. 42

---

[5] These "for-profit" subsidiaries are simply independent investment funds or accounts, in which Mercy deposited funds for investment purposes; all but one of these funds actually lost money in 2019. These investment funds include the following: Antero Midstream Partners, L.P; Carlyle Realty Partners VI, L.P.; Carlyle Realty Partners VII, L.P.; CB OP Aggregator I, LP; CB OP Aggregator II, L.P.; Charlesbank Equity Fund IX, LP; CNX Midstream Partners LP; Eagle Fund II, L.P.; Eagle Fund III, LP; Enable Midstream Partners, LP; Energy Transfer LP; Enterprise Products Partners LP; EQM Midstream Partners, LP; Genesis Energy L.P.; Lime Rock Partners VIII, L.P.

U.S.C § 2000e-1(a). However, Plaintiff argues that Mercy "waived" its Title VII exemption because Mercy was required to comply with the Center for Medicare & Medicaid Services' vaccination mandate ("CMS Mandate"). This argument fails, not only as it is a red herring, but because its legal rationale is fatally flawed.

In *Jenkins v. Mercy Hospital Rogers*, the district court addressed this exact same argument of waiver, but held that the defendant in that case (a sister hospital of Defendant Mercy Hospital St. Louis here) could not waive its religious exemption by implementing various employment policies, as long as it continues to be a religious organization exempt from Title VII prohibitions. No 5:19-CV-05221, 2020 WL 1271371, at *2 (W.D. Ark. March 17, 2020) (citing *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000) and *Little v. Wuerl*, 929 F.2d 944, 9151 (3rd Cir. 1991)); *see also Saeemodorae v. Mercy Health Services*, 456 F.Supp.2d 1021, 1038 (N.D. Iowa, 2006).

In *Jenkins*, the plaintiff espoused a waiver argument, nearly identical to Plaintiff's theory here, that Mercy's anti-discrimination policies required it not to discriminate against individuals on the basis of religion. *Id.* However, the court affirmatively rejected the plaintiff's argument:

> "[T]he religious organization exemption is a limitation on Title VII's reach. By prohibiting employment discrimination for enumerated reasons, Title VII alters the general rule in the United States that employment is at will, and in altering that rule Congress elected not to limit religious organizations from making employment decisions based on religion. As a religious corporation, Mercy remains free to discriminate against its employees on the basis of religion, whether or not Mercy has adopted an internal policy claiming it will not do so."

*Id.*

The *Jenkins* decision's analysis remains true and applicable to Plaintiff's arguments. Here, Plaintiff says that Mercy's compliance with the federal CMS Mandate operates as a waiver, essentially making the same argument that was made in *Jenkins*. Not only can Mercy not waive its exemption as a religious organization under Title VII, but compliance with the federal CMS

Mandate cannot result in a forfeiture or waiver of Mercy's religious organization status and the exemption provided to Mercy by Title VII. "Once Congress stated that '[t]his title shall not apply' to religiously-motivated employment decisions by religious organizations,' neither party could expand the statute's scope." *Hall*, 215 F.3d at 625. "[T]he exception for religious organizations in Title VII 'is a structural limitation imposed on the government by the Religion Clauses, a limitation that can never be waived.'" *Ark Encounter, LLC v. Parkinson*, 152 F.Supp.3d 800, 915 n.25 (E.D. Ky. 2016); *see also Ginsburg v. Concordia Univ.*, 2011 WL 41891, at *6 (D. Neb. Jan. 5, 2011) (stating that "because an institution qualifies for the exemptions under Title VII, it cannot waive its right to assert protection under those exemptions"); *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 229-30 (3d. Cir. 2007); *Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1039 (N.D. Iowa 2006).

It is clear that Mercy has not waived (and, indeed, ***cannot waive***) its religious organization exemption by following the federal CMS Mandate. Accordingly, Mercy is entitled to summary judgment in its favor based on its qualification for the Title VII religious organization exemption.

### D. Plaintiff's estoppel claim fails for the same reasons as Plaintiff's theory on waiver.

Just as Plaintiff's waiver argument fails, so too does her estoppel argument. Plaintiff merely duplicates the same argument she makes regarding waiver, but tries to present it under a different name. Plaintiff's theory is that Mercy is estopped from asserting its religious organization exemption defense because Mercy's Vaccination Policy "provided that the religious exemptions would be granted provided a request was timely submitted." *See* Doc. No. 19 at p. 8.

Not only is this an improper backdoor attempt to sidestep the threshold dispositive issue involving Title VII's religious organization exemption, but it is also a false statement and a misrepresentation of Mercy's policy. In fact, Plaintiff does not even provide a copy of Mercy's COVID-19 Vaccination Policy; she only attaches a copy of the Frequently Asked Questions

("FAQs") associated with the Policy. *See* Doc. No. 20-10. Neither the FAQs nor the Policy itself state that exemptions would be granted provide a request was timely submitted. Rather, the Policy states that "Mercy **may grant** co-workers exemptions to the mandatory COVID-19 vaccination for certain medical contraindications or sincerely held religious beliefs." *See* Doc. No. 23 at ¶ 11 and Doc. No. 23-9 (Exhibit JM-7).

The FAQs state the same: "Exemptions to the mandatory COVID-19 vaccination may be granted for certain medical contraindications…Exemptions to the mandatory COVID-19 vaccination may also be granted if vaccination conflicts with the tenets of a sincerely held religious belief." *See* Doc. No. 20-10, p. 3.  Importantly, the CMS Mandate actually *disfavors* vaccine exemptions and only allows Mercy to retain unvaccinated staff if that staff member has a bona fide legal right to a reasonable accommodation pursuant to Title VII or the ADA. *See* External FAQ: CMS Omnibus COVID-19 Health Care Staff Vaccination Interim Final Rule, found at https://www.cms.gov/files/document/cms-omnibus-covid-19-health-carestaff-vaccination-requirements-2021.pdf (at p. 12).  Therefore, Mercy *would be violating* the federal regulation if it automatically granted exemptions without making sure they qualified as bona fide exemptions.

Plaintiff's reliance on these documents cannot form the basis of an estoppel claim. Mercy never made any representations to anyone that their religious exemptions would be granted solely because a request was timely submitted. The only representation conveyed by Mercy in its Policy and FAQs was that an exemption *may* be granted. As such, there was no representation that the exemptions would be provided, especially not for merely submitting a timely request. If Plaintiff could have relied on anything in Mercy's COVID-19 policy or its FAQs, it was that an exemption **may be granted**, not that it was going to be granted. Moreover, Mercy's policy cannot be construed as a promise upon which Plaintiff could rely. *See Ockletree v. Franciscan Health System*, 2012 WL 6146673, at *6 (W.D. Wash., Dec. 11, 2012) (holding that defendant hospital

"is not estopped from asserting religious exemption because its written policy cannot be construed as a promise that [sic] it would not assert the exemption").

Moreover, Plaintiff was aware at the outset of this litigation of Mercy religious organization exemption defense. Mercy pleaded its religious exemption as an affirmative or other defense in its Answer. *See* Doc. No. 9, p. 9. In fact, prior to filing her lawsuit, Plaintiff received notice that Mercy was a religious organization as identified by the Missouri Commission on Human Rights, when it refused to issue Plaintiff a Right to Sue letter under Missouri law. *See* Doc. No. 20 at ¶13). Plaintiff admits this; there is no valid argument that the defense should not be applied to Mercy.

Furthermore, this argument is completely irrelevant to the threshold issue of whether Mercy is a religious organization entitled to Title VII's exemption for such organizations. The substantive religious discrimination arguments would be appropriate for a subsequent stage of discovery, litigation and argument. However, this Court need not reach any subsequent stage in this litigation. Plaintiff's estoppel argument fails, and Mercy is entitled to summary judgment in its favor based on its qualification for the Title VII religious organization exemption.


## **CONCLUSION**

For all of the reasons as stated herein, and in its Memorandum in Support of its Motion for Summary Judgment, its Statements of Fact, and Plaintiffs admission of its Facts, Defendant Mercy Hospital St. Louis respectfully requests that this court grant its Motion for Summary Judgment, award its costs and attorney's fees, and grant it any other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ James M. Paul
James M. Paul, MO #44232
Thomas R. Chibnall, MO #67994
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Telephone: 314-802-3935
Facsimile: 314-802-3936
james.paul@ogletree.com
thomas.chibnall@ogletree.com

Attorneys for Defendant Mercy Hospital
St. Louis

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 27th day of April, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Joseph A. Ott
Mark E. Blankenship, Jr.
3544 Oxford Blvd.
Maplewood, MO 63143
Tel: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law

*Attorneys for Plaintiff*

/s/ James M. Paul
An Attorney for Defendant Mercy Hospital St.
Louis