

MAY 19 2023
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAREN RUBY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 18SL-CC03624 |
| | ) | |
| v. | ) | Division No. 12 |
| | ) | |
| MERCY CLINIC EAST COMMUNITIES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is the Motion for Summary Judgment filed by Defendant Mercy Clinic East Communities ("Mercy"). The Court, having considered the pleadings and submissions in the summary judgment record, is fully advised. The Court now rules as follows.

*Background*

Plaintiff Karen Ruby Brown ("Brown") filed her First Amended Petition effective as of May 6, 2019. The Order and Judgment of that date, which granted leave to file the amended pleading, also entered partial summary judgment with respect to Counts III and IV of the First Amended Petition. Those Counts set forth claims under Missouri's Whistleblower Protection Act, section 285.575, R.S.Mo. (the "WPA").[1] Count V of the First Amended Petition, setting forth a claim of promissory estoppel, was dismissed without prejudice.

In light of the foregoing, the only remaining claims are Counts I and II of the First Amended Petition, which are common law claims for wrongful discharge. Mercy contends that Brown's common law wrongful discharge claims were abrogated by the WPA. Mercy further contends that, even if Brown could pursue a common law wrongful discharge claim, the

[1] The WPA expressly excludes from its definition of "employer" any "corporations and associates owned or operated by religious or sectarian organizations." § 285.575.2(2). There is no dispute that Defendant Mercy falls within that description, and that therefore a statutory action may not be brought against it under the Act.

EXHIBIT B

undisputed facts show that no wrongful discharge occurred, entitling Mercy to judgment as a matter of law.

*Brown's Common Law Claims*

In the remaining Counts I and II, Brown alleges she is an Advanced Practice Registered Nurse who was wrongfully terminated in November, 2017 from her employment with Mercy. She claims she was discharged based on her reporting of wrongdoing and violations of law and public policy, and her refusal to perform illegal acts.

Missouri is an at-will employment state. The at-will employment doctrine has been firmly established in Missouri for over 130 years. *See Finger v. Koch & Schilling Brewing Co.*, 13 Mo. App. 310, 311 (Mo. App. St. Louis 1883). One of the exceptions to the employment at will rule recognized by the courts is the common law public policy exception. That exception was articulated in 1985 by the Western District in *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 877-78 (Mo. App. W.D. 1985). It was not recognized by the Missouri Supreme Court until 2010. *See Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010); *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010); and *Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342, 346 (Mo. banc 2010).

Prior to enactment of the WPA, Missouri courts recognized four categories of cases that are encompassed within the public policy exception to at-will employment: (1) termination of employees who refuse to obey directions to commit a crime or to act contrary to public policy; (2) termination of employees who report wrongdoing or violations of law or public policy by their employers or fellow employees; (3) termination of employees who engage in actions normally encouraged by public policy, such as reporting to jury duty; and (4) termination of employees who file claims for workers' compensation. *Jones v. Galaxy 1 Marketing, Inc.*, 478

S.W.3d 556, 563 (Mo. App. E.D. 2015). In the case at hand, Ms. Brown claims that her claims fall within the first two categories recognized under the public policy exception – termination for refusal to commit a crime and for whistleblowing. The question is whether the WPA precludes her bringing a common law action for wrongful termination.

*The WPA's Effect on Brown's Common Law Claims*

Mercy previously moved to dismiss Counts I and II based on the argument that the WPA abrogated Brown's common law rights, leaving her without a remedy. By Order entered September 9, 2019, this Court rejected that argument. Mercy invites the Court to reconsider that ruling in the summary judgment context. The issue remains the same – when the General Assembly enacted the WPA, specifically stating that the WPA, together with chapter 213 and chapter 287, "shall provide the exclusive remedy for any and all claims of unlawful employment practices," did it intend to abrogate common law claims for wrongful discharge of whistleblowers who were employed by entities not within the definition of "employer" under the WPA?

The General Assembly stated the intent behind the WPA:

> This section is intended to codify the existing common law exceptions to the at-will employment doctrine and to limit their further expansion by the courts. This section, in addition to chapter 213 and chapter 287, shall provide the exclusive remedy for any and all claims of unlawful employment practices.

§ 285.575.3, R.S.Mo. As discussed in the Court's September 9, 2019 Order, the legislative intent of the WPA is clear. The General Assembly meant for the WPA to provide the exclusive remedy for discharge by an "employer," as defined in the WPA, of an employee meeting the definition of "protected person" (a whistleblower). Mercy took the position that it is not an "employer" under the WPA, as it is controlled by a religious organization. This Court agreed with Mercy, which is why the Court granted judgment in Mercy's favor on Ms. Brown's

statutory claims. There is nothing in the WPA to support Mercy's position that it is relieved from common law liability by way of a statute that expressly exempts Mercy from its terms.

Furthermore, Mercy's suggested reading would not fulfill the legislative intent to "codify the existing common law" and provide a statutory "exclusive remedy" for plaintiffs such as Brown. Rather, Mercy's reading would amount to the abolishment of a common law cause of action and the elimination of any remedy whatsoever. This is directly contrary to the clearly stated legislative intent of the WPA.

A similar issue was presented in *Yount v. Keller Motors, Inc.*, 639 S.W.3d 458 (Mo. App. E.D. 2021). There, the employer argued that by defining the term "employer" to exclude employees of the employer, the legislature expressly and affirmatively eliminated the common-law protection of an employee who reports an unlawful act or misconduct of coworkers. The court rejected that argument:

> However, such a result would substantially limit rather than codify Missouri's existing common-law exceptions to the at-will employment doctrine. As is plainly understood by the language of the statute in Section 285.575.3, while the legislature may have had concern with a future expansion of whistleblower rights, the legislature was intent on retaining the common-law protections that existed upon the enactment of the WPA. Broadly applying the narrow definition of 'employer' set forth in 285.757.2(2) directly contradicts the express language of Section 285.575.3, which states this section is intended to codify the ***existing*** common-law exceptions to the at-will employment doctrine.

*Id.* at 467-68 (emphasis original).

The legislature is presumed to know the common law at the time it enacts a statute. *Id.* at 468, citing *Hopfer v. Neenah Foundry Co.*, 477 S.W.3d 116, 126 (Mo. App. E.D. 2015). At common law, Brown had the right to bring an action for wrongful termination for reporting violations of law or public policy to superiors, and for refusing to perform illegal acts. That right was not eliminated by the WPA.

*Brown's Whistleblower Claim and Claim She Refused to Follow Illegal Directives*

Brown claims that she reported illegal conduct of Mercy to her superiors. Specifically, Brown claims she reported illegality "when she told the physicians at the November 20, 2017 meeting that she felt what they were asking her to do with regard to first assisting was unsafe and outside the scope of her practice." She also claims she reported to Mercy's safety department, via a SAFE report, that she was asked to first assist in a c-section by her supervisor without proper training or expertise, rendering the surgery unsafe. According to Brown, she was asked to function outside of her "education, training, knowledge, judgment, skill, and competence as an RN," which she claims is illegal under Missouri law. Brown cites 20 Mo. C.S.R. 2200-4.100(4). Brown contends that her report of this conduct directly caused her termination.

Mercy contends that Brown did not report anything illegal, but was terminated for exhibiting a bad attitude and failing to get along with others. Mercy states that Brown's only report of unsafe conditions was a single complaint filed after she was terminated. That is not accurate. Mercy's Statement of Uncontroverted Facts ("SUF") states that Brown was suspended during a meeting on November 22, 2017. SUF ¶ 69. Brown's SAFE report was submitted to Mercy on the same day. Plaintiff's Exhibit 5 ("Reported date 11/22/2017"); Plaintiff's Statement of Additional Uncontroverted Facts ("SAUF") ¶ 63. Mercy admits that Brown was not terminated until November 29, 2017, which was seven days after Brown filed her SAFE report. SUF ¶ 71; SAUF ¶ 71.[2]

Brown contends she refused to act unsafely in connection with a November 17, 2017 c-section. Brown contends that proceeding with "faking it" during the procedure would have

[2] In her deposition, Brown confirmed that the SAFE report was dated November 22, 2017, but went on to testify that "I did submit that actually after Elizabeth told me that I would be terminated." The actual date of the SAFE report and date of Brown's termination are not in dispute – Brown made her safety report the date of her suspension but before termination.

violated the law. She contends that her refusal to obey the illegal directive led to her termination. Mercy contends that Brown was fired for her bad attitude, and that Brown was never asked to perform an unsafe or illegal activity.

The Court concludes that issues of fact remain in dispute as to Brown's common law claims.

*Conclusion*

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is DENIED.

SO ORDERED:

Stanley J. Wallach
Circuit Judge, Division 12
Dated: 5/19/2023